(No. 30674.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GRADY NELSON JONES, Plaintiff in Error.

*Opinion filed January 19, 1949.*

L. H. HOLLAND, of Wood River, and RALPH T. SMITH, of Alton, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and C. W. BURTON, State's Attorney, of Edwardsville, (A. AUSTIN LEWIS, of Granite City, of counsel,) for the People.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

The plaintiff in error, hereinafter referred to as defendant, was tried in the circuit court of Madison County under an indictment for manslaughter. The jury returned a verdict of guilty. A motion for a new trial was overruled, and defendant prosecutes this writ of error to review the judgment sentencing him to the penitentiary for a term of five to ten years.

The evidence disclosed that the deceased, together with defendant and three other prisoners, had been confined in one cell block in the Madison County jail for a period of about three weeks prior to the former's death. The deceased was a person of low mentality, having little ability to defend or take care of himself. He was not quarrelsome, and would do almost anything he was told to do by the other prisoners. One of those prisoners testified at the trial that defendant had on occasion struck the decedent, and had slammed him against the steel partition walls; that the night before decedent suffered the illness from which he died, the defendant, in the course of certain exercises, became angry and jumped up and down on the decedent's chest while the latter was lying on his back on the concrete floor.

On October 13, 1947, the decedent became seriously ill. At about 2:30 on the afternoon of that day, an examination was made by the county physician, who diagnosed the condition as serious and notified the sheriff that the prisoner was in need of immediate hospitalization. About two hours later the prisoner, who was still in his cell, was pronounced dead. A post-mortem examination revealed that the cause of death was a crushing injury to the chest, which had broken the breast bone and almost all of the ribs of the deceased; that bilateral emphema or abscesses had developed in the fracture areas, and a terminal pneumonia was present. The examination further disclosed that both of his eyes were discolored, his left ear swollen, and a large swelling, about the size of a fist, was apparent on his head near the right ear; that there were several small cuts on the lower lip, and six circular burns on the chest, upper abdomen and left buttock, about the size of the end of a cigarette. The physician conducting the examination testified that the pneumonia was directly due to decedent's chest injuries, and that such injuries could have been caused by another person jumping up and down on him and stomping upon him if he were lying on his back on a concrete floor. The defendant testified on his own behalf, denying that he had jumped or stomped on deceased.

In the course of the trial the prosecution offered in evidence a written confession. The defendant objected to its admission, on the ground that it had been obtained by force and coercion. A hearing was had on that issue, out of the presence of the jury, at the conclusion of which the court found the statement to be freely and voluntarily made by defendant and allowed it to be put in evidence. Defendant contends the court erred in this ruling.

At this hearing the testimony of witnesses for the prosecution disclosed that at about three o'clock in the morning of October 14 defendant was brought to the office of the State's Attorney and questioned in the presence of the

State's Attorney, an assistant State's Attorney, the sheriff and two of his deputies. Only the sheriff and one deputy testified as to what happened on this occasion. The sheriff testified that to his knowledge no one abused the prisoner, but that he had frequently left the room and did not know what transpired in his absence. A deputy sheriff named Pettit testified that he did not use any force or violence on the defendant at that time and place. The only other witnesses for the prosecution were two newspaper reporters who testified that on the afternoon of October 26 they were present in the office of the State's Attorney where the defendant answered questions of the State's Attorney and signed a written statement. They further testified that on that occasion no force, threat, or coercion was used to obtain his signature.

The defendant testified, in his own behalf, that at three o'clock in the morning of October 14, he was questioned in the State's Attorney's office, that he then said he did not know anything about what had happened, and thought the decedent had died of natural causes; that the persons present called him a liar, and the deputy sheriff, Pettit, pulled his hair, hit him on the side of the head, and put his arms behind him and bumped his head on the floor. The session lasted until daylight, when he was returned to a cell. The next day defendant made a statement in the office of the State's Attorney, who refused to accept it. Defendant was then returned to the jail and put on half rations for a few days. After that, the only food he received was three slices of bread each day for the next five days. He was also deprived of his blanket and cigarettes. On Sunday afternoon, October 26, while he was still on such rations, he notified the sheriff that he wished to make a statement. He was then brought to the office of the State's Attorney, where he gave the written statement offered in evidence by the prosecution. That same day he was put back on full

rations. The prosecution produced no evidence contradicting defendant's testimony that he was deprived of normal food and comforts. No employee in charge of the jail or the serving of meals was called to deny this testimony of defendant.

If this testimony is true, and in the absence of a denial it must be so regarded, a gross outrage was committed which not only deserves the severest condemnation but which must exclude as evidence any confession or statement obtained by such means. It should no longer be necessary to reiterate the well-settled rule that a confession is not voluntary where any degree of influence amounting to duress is used to obtain it by those having authority over the person of the accused. A confession so obtained must be excluded because the law cannot measure the effect of such influence. *People* v. *Davis,* 399 Ill. 265.

There was no denial that defendant had been deprived of normal rations, and no excuse was shown for the failure to call as witnesses the other persons implicated in such conduct. The existence of duress is not to be determined by the superficial test whether the acts in question were performed at the time the confession is made. If those acts are responsible for the confession, it is immaterial that they may have been performed prior to the day on which the statement is given. Here the undisputed testimony of defendant shows that he was deprived of a normal supply of food for a week immediately preceding his statement; that he signed the statement for the reason that he was hungry and needed food; and that promptly upon the making of that statement he was returned to his normal rations. This presents a clear example of an involuntary confession.

Without the confession of defendant in evidence, the case would have been close. The fact that the crime with which a person is charged is revolting in its brutality should not be permitted to obscure the importance of rules of evi-

236

dence evolved for the protection of all persons accused of crime. It is precisely in that type of situation that those basic rights are of the greatest value, for the emotion engendered by the contemplation of inhuman behavior too often results in a miscarriage of justice.

Under the circumstances presented by this record, it was error to admit in evidence defendant's signed statement. It is therefore unnecessary to consider other alleged errors of the trial court.

The judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*