(No. 36483.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES COLLINS, Plaintiff in Error.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

JOHN P. BLAKE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

This case comes before us on writ of error to the criminal court of Cook County to review the conviction of James Collins for forcible rape. Following a bench trial, which resulted in a finding and judgment of guilty, sentence of imprisonment in the penitentiary for fifty years was imposed, and motions in arrest of judgment and for a new trial were denied.

The major points relied upon are that a statement given police by defendant, and a subsequent confession given to an assistant State's Attorney, were secured by coercion,

violence and duress, that the court erred in refusing to call Earl Whitsett as a court's witness, and unduly restricted the right of the defendant to show what defendant claimed to be a meretricious relationship between the complainant and Earl Whitsett which would have affected the probative value of Earl Whitsett's testimony.

In our opinion no useful purpose would be served by detailing the facts of the occurrence in question as related by the parties. Suffice it to say that the complainant's testimony, if true, was sufficient to establish a vicious, brutal and revolting case of forcible rape and related sexual activity of a repulsive nature. The defendant's testimony, if believed, would tend to establish either that no sexual intercourse occurred, or that, if it did occur, it was done with the consent of the complainant. This case is peculiarly one in which the trier of fact, whether judge or jury, must decide whether the State's witnesses shall be believed or the unsupported and uncorroborated testimony of the defendant shall be accepted as creating a reasonable doubt of his guilt. The trial judge who heard and saw the witnesses and was in a much better position to determine which witness was worthy of belief than are we, accepted the State's proof as establishing defendant's guilt beyond a reasonable doubt. Therefore, unless reversible error occurred in the course of the trial, the decision of the trial court must be affirmed. *People* v. *Jenkins,* 24 Ill.2d 208.

We accordingly address ourselves to defendant's allegations of error. The first of these involves the question as to whether the confession of the defendant was the result of coercion, violence and duress. In support of his contention that it was, defendant filed a preliminary motion to suppress all statements given by him. A hearing was had upon this motion before the trial judge, and numerous witnesses testified. The substance of the defendant's testimony was that he was arrested about 10:30 P.M., June 20, 1959, (the date of the offense,) and was taken with complainant

from the place of arrest to the Michael Reese Hospital where he remained approximately one and one-half hours while complainant's care was being arranged for. He was then taken to the police station where he was locked up for two or three hours, following which two officers took him to the interrogation room where they asked him questions as to what had occurred earlier in the evening; that defendant denied raping complainant, whereupon the officers told him he was lying and proceeded to kick him in the legs. The statements made by the defendant at this time were written down by the officers, and, following approximately one hour's interrogation, defendant was returned to his cell at five or six o'clock that morning. There is some confusion as to when the defendant was next questioned, but apparently no further interrogation occurred until Tuesday, June 23, when defendant was taken to the sex bureau about nine or ten o'clock in the morning, and there placed in a private cell where he remained about an hour before being taken to the office of the assistant State's Attorney in the same building. His testimony indicates several officers were there present, together with the complainant in this case, her son and daughter, and a woman who apparently was a complainant in a separate rape case against defendant. Defendant was then questioned by the assistant State's Attorney in the presence of a court reporter and the above individuals, the questions and answers subsequently being transcribed and presented to plaintiff for signature. Defendant testified that when the turnkey subsequently brought the written statement made by defendant in the office of the assistant State's Attorney to defendant for his signature, the turnkey acted "awful evil and very violent"; that the turnkey appeared to be very angry, told defendant the statement would not be presented in court, that the turnkey would sign the statement as defendant's witness, and that the turnkey "wasn't going to waste any damn time getting defendant to

sign the statement," which was only for the assistant State's Attorney's files. Defendant testified that he was in fear at the time and, while he signed the statement, he did so unwillingly. The defendant was handcuffed to a chair during the time he was questioned by the officers, with one wrist being handcuffed to the arm of a chair. Defendant's legs were not cuffed or strapped.

The State called as witnesses all persons who were present at any time during any portion of the defendant's interrogation with the exception of detective Bill Cashman who died prior to the trial. Defendant's contention that he was kicked during the interrogation on the morning of the 21st was categorically denied by the officers who questioned him at that time. In this connection, it is pertinent that, while defendant claims to have been kicked at that time by the officers, the statement he then gave was not a confession—it consisted of a denial of the forcible rape, and was an exculpatory statement. No confession by the defendant occurred until June 23, two days later, and there is no testimony by the defendant or anyone else that he was in any way abused, threatened, or otherwise subjected to any form of duress or coercion in the intervening two days or in connection with the confession, other than his claim that the turnkey "acted awful evil and very violent." This statement is accompanied by the defendant's admission that the turnkey did nothing to harm or abuse the defendant, and the defendant's testimony with reference to the way the turnkey looked, and his statement that he "was not going to waste time" with the defendant, were denied by the turnkey and the assistant State's Attorney who was present at the time.

The testimony of the defendant relating to his interrogation is not such as to engender confidence and belief on the part of the hearer or reader. Defendant's claims are entirely unsupported and uncorroborated in every respect,

and we believe the trial judge was completely justified in rejecting them.

We have examined the cases cited by defense counsel and find them to be inapplicable to the factual situation in this case. *People* v. *Sweetin*, 325 Ill. 245, which is cited as authority for rejection of the confession of June 23 because of the alleged violence on the morning of June 21, is readily distinguishable on the facts, as is the case of *People* v. *Jones*, 402 Ill. 231. We are of the opinion that the motion to suppress was properly overruled. *People* v. *Sims*, 21 Ill.2d 425.

The other alleged error committed in the trial court involves the refusal of the trial judge to call Earl Whitsett as the court's witness at the request of defendant. The purpose of defendant's request was to enable defendant to cross-examine this witness and attempt to establish a meretricious relationship between the complainant and Earl Whitsett on the theory that a showing of such relationship was admissible for the purpose of affecting the probative value of Earl Whitsett's testimony. In the colloquy between counsel and the court in connection with the question of calling Whitsett as the court's witness, the court indicated his opinion that whether such relationship existed or not had no bearing on the case, stating "if she was a street walker, what difference would it make?". Counsel for defendant then stated that the defense in the case was one of consent, and that counsel desired to examine into the background of the complaining witness and show the details of the relationship existing between her and witness Whitsett. The court thereupon refused to call the witness as the court's witness, and stated "You can call him, and if there is any indication that he is hostile, then the court will call him as its witness."

The question as to whether the witness should have been called as the court's witness was one which is addressed to the sound discretion of the trial court. On the basis of the showing here we are of the opinion that the trial court

did not abuse his discretion in refusing to call the witness as the court's witness until some hostility to the defendant became apparent in the case. *People* v. *Crump*, 5 Ill.2d 251, and cases there cited.

The defendant further contends that defendant should have been permitted to examine Whitsett in detail as to the relationship between Whitsett and the complainant. The court did permit counsel to ask Whitsett the purpose of the meeting with complainant on the night of the occurrence, but permitted no further examination with reference to the relationship.

Since want of consent on the part of the complainant is of the essence of the crime of forcible rape, and must be proved by the prosecution beyond a reasonable doubt before there can be a legal conviction of the crime, it is permissible, in order to show the probability of consent by the prosecutrix, that her general reputation for immorality and unchastity be shown. The underlying thought here is that it is more probable that an unchaste woman would assent to such an act than a virtuous woman, but specific acts of immorality on the part of the complainant may not be shown. The proof must be limited to the general reputation of the complainant, and therefore the court was correct in its ruling that the details of any relationship existing between Earl Whitsett and the complainant could not be inquired into. *People* v. *Fryman*, 4 Ill.2d 224; *People* v. *Cox*, 383 Ill. 617; *People* v. *Allen*, 289 Il. 218; *Shirwin* v. *People*, 69 Ill. 55.

Since we find no error in the rulings of the trial court, and since the proof abundantly supports the court's finding, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*