STATE OF WEST VIRGINIA

*v.*

JAMES LEE GREEN

(No. 14140)

Decided November 13, 1979.

682

*John R. Frazier* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

James Lee Green was found guilty by a Mercer County jury, of second degree sexual assault on twenty-six year old Margaret Ann McClung. Sentenced to serve five to ten years in our penitentiary, his appeal alleges: (1) the trial court erred when it told him that if he testified the State could attack his character, and then did not correct his lawyer's advice to him in the court's presence, that if he testified the State could introduce prior convictions other than for perjury or false swearing, (2) the court should have directed acquittal because of lack of evidence of guilt, (3) our sexual assault statute prohibiting a victim from being questioned about her previous sexual conduct, is unconstitutional, (4) the court should have given a defense instruction that a rape victim must exercise every means within her power to resist penetration, and (5) the State's closing argument was inflammatory.

Ms. McClung lived in Bluefield, West Virginia, where the alleged rape occurred December 12, 1976, between 7:00 and 8:00 p.m. Petitioner's co-defendant, James Stepney, occupied an apartment next to Ms. McClung's.

She testified that she knew Stepney but did not know Green, and when the two men came to her door and Green said he wanted to talk to her about his cousin, she let them in.

Once inside her apartment, Green sat in a rocking chair near her bedroom door, and Stepney sat on a couch. They asked for coffee and she served them, and shortly thereafter, Green went to her rest room which was accessible only through the bedroom. When he left the bathroom, he stopped in the bedroom and told Ms. McClung to come in, that he wanted to talk to her about his cousin.

She refused, but walked to the rocking chair. "There was a piece of soap or something on the floor, I forget now, I bent over to pick it up. And when I bent over to pick it up, Green hollered at me, and I am nervous. And he grabbed me and throwed me on the bed, and he started ripping my clothes off of me." She testified that he forcibly raped her despite her resistance, that he tore her undergarments, struck her, and choked her when she tried to reach a telephone to call police.

She testified that after Green put his clothes on, he summoned Stepney who also forcibly raped her. Green stayed in the room and again had sexual intercourse forcibly with her after Stepney returned to the living-room. Then Ms. McClung ordered the men to leave and they did; but Green returned briefly, held a knife to her throat and threatened to harm her if she called police. After they left, McClung bathed, called a male friend whose name she could not recall, and later that evening he took her out to talk.

The next day after advice by other friends she reported the incident to Bluefield's city police. She was examined by a doctor at Bluefield Sanitarium. Test results were negative.

One officer testified that he noticed red marks on her neck when he first interviewed her about the event. He said the marks looked like "friction marks" but "the skin wasn't broken." Police secured her clothing worn on December 12, for possible laboratory examination; but oddly it was neither examined nor introduced into evidence.

Three persons testified for Green. A Bluefield police officer said he took a statement from the victim which was introduced. Two residents of Ms. McClung's apartment building testified that they did not remember any screaming or unusual noises coming from her apartment that evening.

## I.

Green did not testify. The trial court told him that if he took the witness stand he would put his character in issue, thus allowing the State to impeach him with evidence of his bad character; and the court failed to correct his lawyer's pronouncement that evidence of other offenses could be introduced if Green testified.[1]

[1]At defense counsel's request the following colloquy took place in chambers before the defense rested:

MR. MUTH: Your honor, in the presence of this court, out of the presence of the jury, I would like to explain to the Court that at this point I have asked the defendant whether or not it is his wish to testify in this case. I have fully explained the facts and the law with respect to his testimony. I have explained that his testimony is entitled to the same treatment as the testimony of any other witness in a trial of this nature. I have also explained to him the fact that the state can on cross-examination go into certain other matters related to his character and/or possibly into matters of previous offense. On this basis, and after we have considered this, I would like to have the defendant state whether it is his wish or not to testify in this case.

BY THE COURT: Okay, let me ask you some things, Mr. Green. How old are you?

A Twenty-four.

BY THE COURT: And, what is the extent of your education?

A I went to the 10th grade.

BY THE COURT: You went through the 10th grade?

A Yes.

BY THE COURT: Now, you heard your attorney make that statement about explaining to you your right to testify, or your right not to testify. Do you understand all that he has told you?

A Yes.

BY THE COURT: And do you understand that you have a right not to testify, and that there would be no inferences of any kind from the fact that you don't take the witness stand? The jury can't infer from that. Or, if you go ahead and testify, as he said, your testimony would be considered the same as any other testimony, subject to the Court instructing the jury that they can take in

*State v. McAboy*, W. Va., 236 S.E.2d 431 (1977) applies. Its syllabus points state:

"1. In the trial of a criminal case, a defendant who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing, but it is impermissible to impeach his credibility through any other prior convictions.

"2. Where a defendant elects to place his good character and reputation in issue at a criminal trial, prior convictions may then be introduced to impeach character and reputation."

Neither Green's attorney nor the trial judge properly informed him about the consequences of his testifying. The inaccurate information given him was certainly reversible error.

## II.

Green alleges that the jury's verdict is contrary to the law and evidence basically because there was almost no corroboration of the victim's testimony about the assault and the evidence was insufficient to support his conviction.

We have not discussed corroboration since *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944), where we stated that "[A] conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible, her credibility is a question for the jury". *Id.* at 899, 30 S.E.2d at 544.

Corroboration is not necessary in most states. We reaf-

---

consideration the interest that any witness has—naturally, you would have some interest in a case with you on trial—*and of course, once you take the stand you put your character, that is, show evidence of character other than good character, they can ask you about that. Now, do you understand what I'm talking about?* [Our emphasis]

After this exchange, the defendant informed the court that he did not wish to testify.

firm *State v. Beacraft, supra,* that a forcible rape conviction is possible upon the victim's testimony alone.[2]

## III.

Is that portion of our sexual assault law which limits defendants from presenting evidence of a victim's previous sexual conduct, constitutional? *W. Va. Code,* 61-8B-12 provides:

> (a) In any prosecution under this article in which the victim's lack of consent is based solely on his incapacity to consent because he was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, that such evidence heard first out of the presence of the jury is found by the judge to be relevant.

> (b) In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, that such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim

---

[2]Three justifications for corroboration are: (1) the frequency of false charges of rape, (2) the presumption of innocence to which a defendant is entitled gives way in a rape case to jury emotional prejudices, and (3) the difficulty of defending against a rape allegation. Note, *The Rape Corroboration Requirement: Repeal Not Reform,* 81 Yale L. J. 1365, 1373 (1972).

Each of these might present a compelling argument for adopting a corroboration requirement were it not that in the absence of corroboration, a defendant will be protected by trial judges' power to set aside or direct a verdict because of insufficient evidence, and juries' ability to screen out uncorroborated and frivolous charges. 7 J. Wigmore, *Evidence* § 2061 at 354.

first makes his previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

Green argues that this law violates his right to confront witnesses by restricting cross-examination of his accusers;[3] that the statute is overbroad; and that the alternative to its unconstitutionality should be a case-by-case evaluation of such evidence a defendant seeks to introduce.

The argument that the trial court's interpretation of the law was unconstitutionally overbroad because Green was prevented from examining the victim about other sexual acts with him and his co-defendant has no merit. A rape victim's previous sexual conduct with other persons has very little probative value about her consent to intercourse with a particular person at a particular time. That portion of the law which prohibits such evidence is constitutional.

As to whether he was prevented from examining Ms. McClung about prior sexual relations between them, the record does not support any claim by him that there was such a relationship. At conference in chambers, defense counsel agreed with the prosecuting attorney that no evidence of prior sexual conduct would be introduced, when the prosecutor stated he would not introduce the co-defendant's statement which referred to previous voluntary sexual relations with the victim. There is no evidence that Green wanted to introduce evidence of prior sexual relations between himself and Ms. McClung.

Most rape shield statutes that have been judicially examined provide for balancing Sixth Amendment claims against a victim's privacy rights. The common

---

[3]The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."
The same right is in W. VA. CONST., art. 3, § 14.

vehicle to decide this balancing is an *in camera* hearing by the trial court. A typical statute containing this device was upheld in *People v. McKenna,* ____ Colo. ____, 585 P.2d 275, 279 (1978):

> The statute provides specific means by which a defendant may make a formal offer of proof, and a full *in camera* hearing may be held prior to trial to determine the relevance, if any, of the evidence. If the court finds that the victim's sexual history is relevant and material in the particular case, then the defendant may introduce the evidence at trial. On the other hand, if the court determines *in camera* that the proffered evidence is irrelevant, the prosecutrix is spared the ordeal of public cross-examination regarding the subject.

The Colorado court thus seems to recognize an *in camera* screening mechanism to be essential to avoid Sixth Amendment—privacy complaints.

Other cases upholding the validity of rape shield statutes containing the *in camera* hearing procedure are: *Roberts v. State,* ____ Ind. ____, 373 N.E.2d 1103 (1978);[4] *State v. Blue,* 225 Kan. 576, 592 P.2d 897 (1979); *People v. Khan,* 80 Mich. App. 605, 264 N.W.2d 360 (1978);[5] *State v. Ryan,* 157 N.J. Super. 121, 384 A.2d 570 (1978);[6] *State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (1978); *People v. Mandel,*

---

[4]The Indiana statute, Ind. *Code* § 36-1-32.5-2, provides for balancing in two situations: (1) to demonstrate past sex acts between the victim and the *defendant,* presumably to show consent; and (2) to demonstrate that a third party, not the defendant, committed the rape. This second issue is usually termed the issue of identity.

[5]The Michigan statute, M.C.L.A. § 750.520j, limits balancing to (1) past sex acts between victim and defendant and (2) "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease."

[6]The New Jersey statute, N.J.S.A. 2A:84A-32.1, is one of the most simple and broadly worded:

61 A.D.2d 563, 403 N.Y.S.2d 63 (1978); and *State v. Cosden*, 18 Wash. App. 213, 568 P.2d 802 (1977).[7]

As expressly provided by the New Jersey statute quoted in n.6, *supra*, the typical balancing procedure has two steps: (1) determination of the relevancy of the proffered evidence and (2) balancing the right of confrontation invoked by the motion to admit the evidence, against the privacy interest of the complaining witness.

*People v. Khan, supra*, determined that the questioned evidence was not "demonstrably relevant" and defendant could not "require us to balance the previously cited state interests in promoting prosecution of sexual crimes against the fundamental requirements of the Confrontation Clause. *But cf.: Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).[8]

---

"In prosecutions for the crime of rape, ... evidence of the complaining witness' previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this act. When the defendant seeks to admit the evidence for any purpose, he may apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions which shall be permitted."

[7] The Washington statute, RCW 9.79.150, permits balancing only on the issue of consent and expressly bars evidence "on the issue of credibility" under any circumstances.

[8] The United States Supreme Court has not decided the validity of rape shield statutes but in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), held a *juvenile* shield law unconstitutional that prevented a defendant from impeaching the state's principle witness, Green, who was on probation for a juvenile delinquency charge. The Court described Green as "crucial" because defendant was not trying to attack Green's character in general,

Cases upholding statutes such as ours that do not provide for balancing, but simply flatly prohibit the evidence are *People v. Blackburn,* 56 Cal. App.3d 685, 128 Cal. Rptr. 864 (1976), and *Smith v. Commonwealth,* Ky. App., 566 S.W.2d 181 (1978). In *Blackburn,* a California Court of Appeal decided that a "shield law" similar to ours did not "deny to the defendant the due process rights of a fair trial or confrontation of witnesses against him."[9] *See also, State v. Jalo,* 27 Or. App. 845, 557 P.2d 1359 (1976).

Neither *Blackburn* nor *Smith* allowed for the possibility that prior sexual conduct evidence could raise a

---

but to show his pro-government bias arising from his probation status and his possible desire to seek favor from the government. Both Davis and Green had been arrested for burglary.

[9] "Unlike the situation where evidence establishing the bias of a prosecution witness or his motive to testify falsely is excluded (see *Davis v. Alaska* (1973) 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *United States v. Harris,* (9 Cir. 1974) 501 F.2d 1), the evidence barred by section 1103, subsection (2) does not concern the credibility of a witness so as to affect the right of confrontation. Section 1103, subsection (2) excludes evidence of the victim's sexual conduct only when it is offered to prove consent. That limited exclusion no more deprives a defendant of a fair trial than do the rules of evidence barring hearsay, opinion evidence, and privileged communications. Hearsay evidence tending to exonerate a defendant may be highly relevant to his innocence but is excluded from consideration by the jury. So also is testimony from a highly respected citizen that he believes the defendant did not commit the crime or, absent a waiver of privilege, testimony of a clergyman that another person has confessed the crime in a manner exonerating the defendant. In those situations, policy considerations dictate that the evidence be excluded, and those policy considerations are deemed incorporated within the definition of a fair trial.

"In adopting the 1974 amendment to Evidence Code section 1103, the California Legislature has imposed another policy limitation upon the admissibility of evidence. In contrast to the hearsay, opinion, and privilege bars, the effect upon the outcome of a trial of the 1974 exclusion is minimal. The relevance of past sexual conduct of the alleged victim of the rape with persons other than the defendant to the issue of her consent to a particular act of sexual intercourse with the defendant is slight at best. The historical rule allowing the evidence may be more a creature of a one-time male fantasy of the "girls men date and the girls men marry" than one of logical inference." [56 Cal. App.3d at 690–691, 128 Cal. Rptr. at 866–867]

shield—Sixth Amendment confrontation. Both cases upheld the rape shield law in sweeping terms.

*State v. Jalo, supra,* involved a precisely focused confrontation claim that collided with the state's perceived categorical prohibition against evidence of prior sexual conduct. The only evidence against the defendant came from the complainant herself and the court characterized defendant's proffered evidence:

> In response the defendant sought to place before the jury evidence, not inherently incredible, that he had discovered the young complainant's sexual misconduct and had threatened to tell her parents. This was offered to attempt to establish the inference, not inherently unreasonable, that the complainant had a motive to and did falsely accuse defendant of the offenses in question. [557 P.2d at 1361]

The court said that "[t]he only difference between *Davis* and this case is that the policy of . . . [the Oregon law] is to protect a sex-crime complainant." [Id. at 1362] The court found that *Davis* compelled the conclusion that the Oregon statute "infringes upon defendant's constitutional right to confrontation as here applied to prohibit evidence of the complainant's ulterior motive for making a false charge." [Id.]

Other state courts have been faced with the issue without the benefit of a shield law to rely on for guidance. In *State v. Lemire,* 115 N.H. 526, 345 A.2d 906 (1975), defendant was limited to cross-examination of a victim only as to general reputation for unchaste acts with third parties and no violation of Sixth Amendment was found.

In *State v. DeLawder,* 28 Md. App. 212, 344 A.2d 446 (1975), in a trial for carnal knowledge, defendant was prevented from showing that the woman had accused him of rape because she thought she might be pregnant by another man and dreaded telling her mother without an "excuse", like sexual assault. The trial court did not

allow questioning to prove this motive, but the appellate court reversed.

*Shapard v. State,* Okla. Crim., 437 P.2d 565 (1967) sets forth three rules: (1) Where lack of consent was not disputed, neither general reputation evidence nor specific act evidence with regard to third parties is admissible. (2) If consent is an issue, general reputation evidence is admissible, but not specific acts with accused. (3) Where evidence at trial tends to establish that victim is pregnant, then evidence of specific acts of intercourse with third parties, is admissible when they occurred near the time of conception, to show that someone other than defendant caused pregnancy.

In *People v. Collins,* 25 Ill.2d 605, 186 N.E.2d 30 (1962) defendant wanted to ask a witness about details of an allegedly meretricious relationship between the witness and victim prior to the alleged rape. He was permitted to ask only the purpose of the witness' meeting with the victim on the night of the rape.

*State v. Deen,* 69 Ariz. 188, 211 P.2d 460 (1949) held that when a daughter charged her father with rape and corroborated her testimony with doctor's evidence of ruptured hymen, the father could show she had sex with other men and was angry with him for his discipline.

*State v. Elijah,* 206 Minn. 619, 289 N.W. 575 (1940) found a defendant not allowed to show that a key prosecution witness was a disappointed suitor of the victim "harboring resentment, hostility, injured feelings." The court emphasized that the evidence was close, there being no eyewitnesses and defendant having a prior conviction.

In *People v. Malston,* 122 Ill. App.2d 466, 258 N.E.2d 362 (1970) it was trial court error to foreclose contradiction of a girl's denial that she told anyone that she had intercourse with someone other than defendant at the time of alleged rape. Defendant was prevented from eliciting that she had told the police matron that someone else, indeed, had had sex with her at that time.

We agree with the Supreme Court of Arizona in *State ex rel. Pope v. Superior Court,* 113 Ariz. 22, 28, 545 P.2d 946, 952 (1976), that "[t]he fact that a woman consented to sexual intercourse on one occasion is not substantial evidence that she consented on another. . . ." We do not agree that her sexual history with other men is *never* relevant and *never* admissible. A woman's reputation for unchastity has no probative value because it is neither relevant to her credibility as a witness nor does it prove she consented in any particular instance. But there may be unusual cases where the probative value is precisely demonstrated, and outweighs the prejudicial effect of the testimony, such as "[where] . . . the defendant alleges the prosecutrix actually consented to an act of prostitution. . . ." [*Id.* at 953]. A statutory prohibition so broad that it forecloses cross-examination even in instances such as that in *Pope,* denies a defendant his right to effectively confront his accuser.[10]

We therefore recommend to our legislature that provision be made for *in camera* trial court determination whereby a judge may decide whether evidence of a victim's past sexual behavior is clearly relevant and material to an accused's "consent" defense.

We would suggest that evidence of consensual sexual activities with others, not specifically and directly related to the act of which a victim complains, should never be admissible; and that such evidence, that is specifically, directly related to the act for which a defendant stands charged, must be of a quality that its admission is necessary to prevent manifest injustice and therefore

[10]For further analysis of the issue, *see: Rudstein, Rape Shield Laws: Some Constitutional Problems,* 18 Wm. & Mary L. Rev. 1 (1976) and Note, *Criminal Procedure—Right of Cross-Examination—Sexual Assault Statute,* 79 W. Va. L. Rev. 293 (1977).

*Also see:* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum. L. Rev. 1, 52–69 (1977), which argues that when a defendant says the victim consented, based on a pattern of prior specific sexual conduct with third parties, or where she acted in such a way as to mislead him into believing she consented, the evidence should be admitted.

outweigh the State's interest in protecting persons who have been sexually abused, from attempts at besmirchment of their character by ones who have trespassed upon their bodies.

## IV.

Petitioner's Instruction 17 was erroneously refused, he says:

> "The Court instructs the jury that to constitute the crime of sexual assault in the second degree, if it be upon a woman capable, in the eyes of the law, of consenting to sexual intercourse, the act must be committed by forcible compulsion and against her will and that the commission of said act must be resisted by the woman, and that the force and resistence (sic) by the woman must be more than verbal expressions, but there must be the exercise of every means of faculty within the woman's power to resist penetration, under the circumstances, and that the persistence in such resistence (sic) must continue until such offense is consumated, and if the jury believe, from the evidence in this case, that the prosecutrix, Margaret Ann McClung, even though they may believe that James Lee Green was present in her home at the time of an alleged assault, did not make such resistence (sic) as herein described and explained, then they cannot find the defendant guilty."

The trial court was correct. *W. Va. Code*, 61-8B-1 defines "forcible compulsion":

> (1) "Forcible compulsion" means:

> (a) Physical force that overcomes such earnest resistance as *might reasonably be expected under the circumstances;* or

> (b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped." [Our emphasis]

The instruction wholly ignored sub-section (b) of this definition and mis-stated sub-section (a).

## V.

Green complains about the prosecutor's closing argument: his highly inflammatory remarks, and several statements that amounted to comments on Green's failure to testify. The prosecutor's comments included: "None of those facts are in dispute. No one said those things didn't take place. ..." "You know, there is one thing I know which has been hidden in this case. ... If Fred Muth [defense counsel] can think of one reason, one lousy little reason at all why this girl would turn a finger at his client sitting over there, other than the fact that he committed this crime, he would tell you what it was. ... There is a motive, you know what it is, I know what it is, everybody knows what it is. It is because he did it. Whether he hangs his head there and won't look at you or not, he did it, and there is no one in this Court Room that ever said he didn't do it. ..." "Let me tell you reasonable doubt is not a cloak people come in and hide behind, and point fingers at people and says, 'Uh-huh, prove it.'"

*State v. McClure*, W. Va., 253 S.E.2d 555, 557 (1979) recognized that *"W. Va. Code,* 57-3-6 provides that a defendant's failure to testify shall create no presumption against him and shall not be the subject of comment before the court or jury by anyone." The quoting *State v. Simon*, 132 W. Va. 322, 52 S.E.2d 725 (1949), we said:

> "In a criminal case, where the defendant has exercised his right not to testify, statements of the prosecuting attorney, in his argument of the case before the jury, that there had been no denial of the testimony introduced by the State, *without specific reference to the failure of the defendant to testify,* does not come within the inhibition of Code, 57-3-6, ..." [Our emphasis]

But here the remarks by the prosecution amounted to specific reference to Green's failure to testify.

Another statement Green alleges was inflammatory was:

"He says lots of inconsistencies in her story. Where are the inconsistencies? 'He slapped me once, he slapped me many times.' Ladies, when you are being raped, be sure to keep a good count of how many times you are being slapped, because a good lawyer is going to want it counted. And be sure you remember what clothes were torn, and be sure you know where they were ripped, because Mr. Muth is going to want an account of that, because he is going to tell the jury you didn't keep count of that, and therefore what you are telling is a lie."

The prosecutor concluded, "Margaret McClung told the same story from the beginning to end. That man right there—look, he won't even look at you—that man right there came in that night and raped her, and it is this jury's duty to tell him you know it."

In *State v. Boyd*, W. Va., 233 S.E.2d 710, 717 (1977) we applied a long-standing rule:

[A] prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. . . . [H]e is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the state's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law. [Citations omitted]

We also said in *Boyd* that the standard by which the prosecuting attorney's behavior is judged differs with the type of crime involved.[7] Hardly any crime is more likely to be fertile for prosecutorial misconduct than

---

[7]"[T]he standard of fair and impartial presentation required of the prosecutor may become more elevated when the offense charged is of a serious or revolting nature, as it is recognized that a jury in this type of case may be more easily inflamed against the defendant by the very nature of the crime charged." 233 S.E.2d 710 at 717.

forcible rape. This prosecutor did not exercise the "degree of decorum" mentioned in *State v. Seckman*, 124 W. Va. 740, 22 S.E.2d 374 (1942), necessary to give defendant a fair and impartial trial. His conduct constitutes reversible error. *See also, State v. Kennedy*, W. Va., 249 S.E.2d 188 (1978).

We conclude that Green's conviction must be reversed, and that he receive a new trial if the government shall choose.

*Reversed.*

NEELY, JUSTICE, *dissenting:*

I respectfully dissent from the majority opinion with regard to its conclusion that *W. Va. Code*, 61-8B-12 [1976], the rape shield law, is not unconstitutional. That provision of the *Code* is manifestly unconstitutional and I hope that the next rape conviction which is affirmed by our Court is appealed to the United States Supreme Court. Every conviction for sexual assault while this statute is on the books will be *prima facie* infirm unless trial judges make a record in every individual rape prosecution conclusively showing that they will disregard the statute and grant the defendant his rights to confrontation. This record is particularly important in guilty pleas to foreclose defendants from asserting that their pleas were coerced by prospective unconstitutional statutory limitation on Sixth Amendment rights in the event they had chosen to proceed to jury trial.

This society's rising consciousness of unjust discrimination against women has brought a rash of enthusiasm for reform. Among the most egregious and intensely felt wrongs is the social tradition which has denied the legitimacy of sexuality in women with the infamous attendant "double standard" for men and women. This Court unanimously concurred in the opinion in *J. B. v. A. B.*, _____ W. Va. _____, 242 S.E.2d 248 (1978) which forbade depriving women of their children for sexual escapades which would be tolerated in men. There are occasions, therefore, when it is possible to eradicate the old law's

discrimination; however, there are other occasions, such as our Legislature's attempt at a rape shield law, when alleged reform is mere obeisance to popular enthusiasm—a product of sophisticated lynch-mob mentality. To take liberty for a moment with Cato, McCarthyism in defense of trendy values *is* still a vice. Lynching in a popular cause is no less lynching.

The confrontation clause of *W. Va. Const.*, art. III, § 14 and its counterpart in the Sixth Amendment to the *Constitution of the United States* provides that one may confront his accusers about *all* issues relevant to his guilt. This constitutional right is absolute and cannot be limited by statute. A prohibition against the introduction of a woman's past sexual conduct where such evidence is relevant is no more legitimate than a prohibition against introduction of alibi evidence in prosecutions for armed robbery.

In a recent case limiting the protection afforded to a juvenile's record, the Supreme Court held that the interests of the accused in introducing evidence of a juvenile's prior conviction outweighed the state's interest in protecting the juvenile's reputation, *Davis v. Alaska,* 415 U.S. 308 (1974). Although the Supreme Court did not declare the statute protecting juvenile offenders' anonymity to be unconstitutional, they did set aside the statute and concluded that it would be unfair to have the accused bear the full burden of the State's interest in the secrecy of juvenile records. *Id.* at 319. After reviewing the scope of the confrontation clause of the Sixth Amendment the Court stated that, "[c]ross examination is the principal means by which the believability of a witness and the truth of the testimony are tested." *Id.* at 316.

Our rape shield statute, like the statute in *Davis*, not only conflicts with the confrontation clause, it also limits the defendant's Sixth Amendment right to "present his own witnesses to establish a defense." *Washington v. Texas,* 388 U.S. 14, 19 (1967). When the United States Supreme Court refused to quash a subpoena for certain

tapes and documents in the hands of President Richard Nixon, the Justices balanced the President's assertion of executive privilege against the rights of the Watergate defendants to compel production of witnesses and materials favorable to the defendants, *United States v. Nixon*, 418 U.S. 683 (1974). Chief Justice Burger stated that "[t]he right to the production of all evidence at a criminal trial ... has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor'. ... It is the manifest duty of the courts to vindicate those guarantees and to accomplish that *it is essential that all relevant and admissible evidence be produced.*" (Emphasis added) *Id.* at 711.

Although the particular facts before us do not present the best setting for testing the constitutionality of the shield law, we may still apply the *Davis* balancing test to the suspect statute. Under that test there are two relevant inquiries: first, the probative value of the evidence sought to be excluded and second, the legitimate state interest sought to be protected. In considering the relevancy of prior sexual history this statute limits the inquiry to prior sexual relations with the defendant or evidence for impeachment purposes if the prosecutrix introduces character evidence.

At the outset, it is important to remember that the proffered evidence will automatically be narrowed by the requirements of materiality (for example the prior sexual conduct of a minor may not be introduced in a statutory rape since consent is not at issue) and relevancy (unrelated sexual history may not be admissible). Just as evidence of the rise and fall of the Nile River is inadmissible in a tax case, so too the sexual proclivities of the prosecutrix may be unrelated to any reasonable theory of defense. The general rule is that inquiries which are irrelevant to matters before the jury cannot be pursued on either direct or cross-examination,

*Pittsonberger v. Andrews*, 112 W. Va. 651, 166 S.E. 367 (1932). However, it is unreasonable to suggest that habitual, indiscriminate sex with strangers is totally irrelevant. In our State where there is no requirement for corroboration, the defendant may be unable to refute the charges absent proof of a motive for a false charge. There are countless possible situations where the defendant would be unable to present a plausible defense other than a fraudulent charge. Wherever there is no requirement of corroboration, the character of the prosecutrix and defendant become the *only* issue when the facts are disputed and there are no independent witnesses. For example, in *State v. DeLawder*, 28 Md. App. 212, 344 A.2d 446 (1975), the defendant sought to prove that the alleged victim of rape had accused him because she feared she was pregnant by another man and wished to attribute her unwanted pregnancy to a sexual assault. There was no applicable rape shield statute in this instance; however, the defendant was accused of statutory rape since the victim was under the age of 14 years. The general rule in a carnal knowledge prosecution had been that evidence of prior intercourse with the defendant, or evidence of a reputation for unchastity was immaterial when offered as an excuse or justification and, therefore, inadmissible for that reason. The Maryland court, recognizing that the prosecutrix may have been motivated to fabricate a rape because she feared revealing the pregnancy to her mother without rape as an explanation, applied the *Davis* approach in reversing a carnal knowledge conviction. Under *W. Va. Code*, 61-8B-12(a) [1976] the evidence of prior sexual history of the prosecutrix would have been inadmissible because the victim's inability to consent was based on the fact she was below the critical age. More importantly, this potentially vital evidence regarding a feared pregnancy by another man would have been inadmissible regardless of the age of the prosecutrix, unless she had chosen to make her previous sexual conduct an issue under *W. Va. Code*, 61-8B-12(b) (1976). Certainly, the prior sexual history may be relevant and its admissibil-

ity mandated by the *Constitution* for that reason "[where] the defendant alleges the prosecutrix actually consented to an act of prostitution." *Pope v. Superior Court*, 113 Ariz. 22, 28, 545 P.2d 946 (1976).

As stated earlier, there is no question that the policy in this statute is a legitimate one. The protection of the prosecutrix from unnecessary inquiry into her private life and the concomitant encouragement of rape reporting is laudable. However, with cross-examination so severely limited by this statute and with no corroboration requirement, the defendant may be left with no avenue of defense. In weighing the increased reports of rape against the possibility of an unjust conviction it must not be forgotten "that traditionally the penalty for rape has been a severe one; that unlike other crimes carrying severe penalties, there have been no delineated degrees of rape; and that factual circumstances of rape, more than those of any other crime, readily lend themselves to strong and different interpretations depending upon one's station or experiences in life, including age, sex, race and environment." *Arnold v. United States*, 358 A.2d 335, 349 (D.C.1976) (Mack, J. concurring in part and dissenting in part). In this regard it is worth noting that nationwide, 89% of the 455 men executed for rape between 1930 and 1969 were black men and nearly all of the complainants were white. See Note, The Rape Corroboration Requirement: Repeal Not Reform, 81 Yale L.J. 1365, 1380 N. 103 (1972).

It is possible to envisage a case where a women has deliberately set out to convict an innocent man of rape— possibly because an original extortion scheme failed. What, for example, would happen if a notorious prostitute were to entice a man to her room and then threatened to "yell rape" if she were not paid? The fact that she is a woman of low moral character, *i.e.*, a person who engages routinely in a calling which is prohibited by law, is indeed relevant to the issue of whether she initiated the encounter and enticed the defendant to her room. When it is her word against his, character determines the jury's conclusion of who is the victim.

While the distinction between rough wooing and rape has always been clear in the law it is not always clear in the back seat of a car or under an apple tree. Since in West Virginia we have a rule that a conviction for rape can be had upon the uncorroborated testimony of the female, syl. pt. 4 of the majority opinion, the character of the female in question may on occasion legitimately be put in issue and this may lead to a history of prior sexual relations. What if a woman were so deranged that she routinely encouraged men to make sexual advances toward her, immediately after the consummation of the act demanded that they marry her, and then upon refusal (possibly from guilt) reconstructed the act in her own mind (to such an extent that she believed it herself) and alleged rape rather than mutual passion? If the entire event occurred in a patch of woods off a lonely road, the man's only credible defense, if he could find the witnesses, would be that the prosecutrix had done the same thing with other males on other occasions.

Recently it has become fashionable to speak in terms of "balancing" the interests; however, in constitutional matters we do not balance unless there are conflicting *constitutional* mandates. For example, the United States Supreme Court has spoken of balancing prior restraints on the freedom of the press against other compelling interests, *Near v. Minnesota*, 283 U.S. 697 (1931), but there has been no case permitting a prior restraint in the past fifty years. Any restraint has always carried a "heavy presumption against its constitutional validity", *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971). Thus when the Court speaks of balancing interests they allow only for the most remote case of extraordinary circumstances such as the publication of the sailing dates of transports or the number and location of troops prior to the battle of Normandy. Certainly imminent national peril is an issue of *constitutional* dimensions.

The principle to be gleaned from this discussion is that whenever a court speaks of balancing, the decision will fall in favor of the constitutional principle whenever a

constitutional proposition finds itself on the scale opposite any other principle of less than constitutional dimension. When any "balancing" of the embarrassment to the prosecutrix against the right to confront a witness is performed the court is actually addressing the probative value and relevance of past sexual history. There is, however, no balance in operation here, because if it is shown that there is any relevance to the defendant's asserted defense, then possible innocence cannot be outweighed by certain embarrassment.

However, this does not mean to condone the prior practice of routinely cross-examining every prosecutrix about her past sexual history, without regard to relevance. That practice was due to consummate insensitivity on the part of judges who failed to recognize the chilling effect of such ordeals on the prosecution for rape. Under close scrutiny for relevance the bulk of prior sexual history will be inadmissible, and to insure the greatest possible privacy it is probably the better course to conduct the initial proceedings to determine the relevance of prior sexual history to the defendant's theory of defense in chambers. A trial court in the exercise of its sound discretion can always exclude evidence which is both irrelevant and scandalous; however, on a showing of the least relevance in chambers, and this does not imply a balancing test as suggested in the majority opinion, it would be unconstitutional to deny inquiry into a prosecutrix's past sexual history where such history is likely to lead to the reasonable inference on the part of the jury that the prosecutrix is lying—or more accurately stated—is likely to produce such question concerning her credibility as to raise a reasonable doubt about the defendant's guilt.

While it is true that a prostitute can be raped, it is a denial of human experience to assert that a woman of loose sexual standards is as *unlikely* to be a party to a fraudulent charge as a woman who is highly circumspect about her sexual activities. The factual situation set forth in *Cannellas v. McKenzie*, ____ W. Va. ____, 236

S.E.2d 327 (1977) is an example of a prosecutrix of such low moral character that her history alone created a reasonable doubt about the defendant's guilt. She was a voluntary social companion; she voluntarily entered defendant's truck at a late hour after drinking all day and smoking marijuana all evening; and, at the age of 16, she had already acquired a promiscuous past. She was out on the night of the alleged rape many hours after her parents had instructed her to be home and she testified that she was afraid of being "whipped" for being out late. The facts read like the first act of Arthur Miller's *The Crucible* where he shows the circumstances surrounding the first accusations of witchcraft in Salem, Massachusetts at the end of the 17th century by a child who looked exactly like the prosecutrix in *Cannellas*. It is not correct to say that Mr. Cannellas was necessarily innocent, but it is correct to say that the character of the prosecutrix raised a reasonable doubt about his guilt. Mr. Cannellas had no other defense than that this child enjoyed sexual relations and voluntarily offered herself to him. Had she been of prior chaste character the credibility of this defense would have been significantly impaired.

It probably bears repeating that there is not one set of constitutional rights for unpopular criminals and another for ordinary ones. While women have a legitimate right not to be intimidated by the specter of public disclosure of every liason they have ever enjoyed, a defendant in a rape trial has a right not to spend ten years in prison for a crime he has not committed. The happy medium is for the trial court to exercise substantial control and to limit inquiries about prior sexual history to those instances where the totality of the circumstances indicate that prior sexual history is relevant.

While the majority opinion implies that a constitutional procedure can be applied notwithstanding the statute, the very existence of the statute has a direct bearing on every stage of the proceedings regardless of the trial judge's ultimate ruling on the admissibility of prior con-

duct. This statute must be struck down and another which complies with *W. Va. Const.*, art. III, sec. 14 and the Sixth Amendment put in its place.