STATE OF WEST VIRGINIA *v.* BENJAMIN BEACRAFT

(No. 9569)

Submitted April 19, 1944.  Decided June 13, 1944.

RILEY AND LOVINS, JUDGES, dissenting.

*E. L. Luttrell* and *Hugh S. Byrer,* for plaintiff in error.
*Ira J. Partlow,* Acting Attorney General, and *Ralph M. Hiner* and *Eston B. Stephenson,* Assistant Attorneys General, for defendant in error.

FOX, JUDGE:

Benjamin Beacraft was indicted and convicted in the Circuit Court of Berkeley County for the crime of statu-

tory rape upon his stepdaughter, Rosa Butts, and sentenced to the penitentiary for an indeterminate sentence of five to twenty years. To the judgment of sentence, he prosecutes this writ of error.

The State filed a bill of particulars, which stated that defendant had sexual intercourse with prosecutrix for the first time shortly after Christmas, 1941, at Jones Springs, in Berkeley County, and thereafter about every one or two weeks until her examination by Dr. H. R. DuPuy, Health Officer of Berkeley County, some time in February, 1943, shortly before defendant's arrest, in the vicinity of the Beacraft home, on one occasion at the home of prosecutrix's aunt, and on another at a roadside stand near Hagerstown, Maryland. The trial court having required the State to elect upon which occasion reliance would be had for conviction, the State elected the alleged occasion in the smokehouse cellar shortly after Christmas, 1941.

To prove the actual commission of the alleged crime the State relies upon the uncorroborated testimony of prosecutrix, an infant between fourteen and fifteen years of age who, the record discloses, was an incorrigible girl. At the time the alleged crime is claimed to have been committed, she resided on a farm near Jones Springs in Berkeley County, with her mother, Anna Beacraft, her brother, and defendant. She testified that shortly before Christmas, 1941, defendant attempted intercourse with her, which she termed incomplete; that shortly after Christmas, 1941, defendant had intercourse with her in the cellar of his smokehouse, to which they had gone to separate potatoes; and that thereafter the act was repeated about once a week until shortly before defendant's arrest on March 16, 1943, on defendant's farm and on two occasions when witness accompanied defendant away from home. Prosecutrix further testified that she feared her stepfather; that he threatened her with bodily injury if she told of their alleged relations; that he worked her hard and on occasions had whipped her; and that defendant told her that if she disclosed the relations between

them, she would go to the reform school and he to the electric chair. This testimony was categorically denied by defendant on both direct and cross-examination.

Lee White, a neighboring orchardist, for whom prosecutrix and defendant had worked, and George Keesecker, at whose home defendant and witness had been, testified for defendant that prosecutrix had told them that she never had immoral relations with plaintiff, but "with a man in Baltimore". Amanda Rockwell, a defense witness and neighbor at whose house prosecutrix stayed all night on one of the several occasions she had run away from home, testified that prosecutrix stated to her: "Damn him, [meaning defendant] I wish I had on him what Lucille [a girl whose father had been convicted of incest with her] has on her dady. I would send him so far he would never get back. I have not got that on him, so if I would tell that, I would tell a story on him".

Defendant introduced the affidavit of Rosa Butts, obtained by defendant's counsel, which, among other things, stated that her stepfather "never at any time, had sexual intercourse with me nor did he ever attempt to", but testified that this statement was untrue, and that she made the affidavit because she feared defendant.

Anna Beacraft, Rosa's mother, testified that there was a smokehouse with a cellar thereunder, when defendant bought the home farm a number of years before prosecutrix claims the act complained of took place; that three years before the trial, which was at the May term, 1943, defendant and witness, assisted by prosecutrix, her brother, and Harvey Rockwell tore down the smokehouse and filled the cellar thereunder with stone from the foundation of an old house which had been destroyed by fire a few years before; and that during the winter of 1941-42, the Beacrafts kept no potatoes in the cellar. Harvey Rockwell and defendant testified to the same effect. On rebuttal the State introduced as a witness one J. W. Bell, who testified that a year before the trial he saw an excavation forty yards from the then location of the smokehouse in which strawberries were stored under a

temporary cover. His testimony in this regard is rather indefinite. Prosecutrix, evidently in explanation of her former testimony, stated on rebuttal that the old smokehouse had been torn down when the Beacrafts moved on the farm, and that there remained an excavation about five feet deep, which had a canvas cover over it. This excavation, witness stated, was filled up with dirt shortly after the strawberry season was over in 1942.

Dr. DuPuy, county health officer, basing an opinion upon his examination of prosecutrix some time in February, 1943, shortly before defendant's arrest, testified that the girl had had sexual intercourse fairly regularly a number of times over a period of months. The record contains no contradiction of this testimony.

Initially we are concerned with the question raised by the sixteenth and eighteenth assignments of error whether the record contains sufficient evidence from which the jury could find beyond a reasonable doubt that defendant had sexual intercourse with prosecutrix on the first occasion set forth in the bill of particulars, to-wit, "a short time after Christmas, 1941." As heretofore noted, the State sought to establish the actual commission of the crime by the uncorroborated testimony of the prosecutrix only. She testified that the act was committed in the cellar of defendant's smokehouse, where they went to sort potatoes. That she had engaged in sexual intercourse frequently over a period of months is clearly established by Dr. DuPuy's testimony. This testimony, of course, does not establish that defendant committed the crime. It does, however, furnish an important basis, taken in connection with prosecutrix's testimony, for the State's contention.

In the Virginias a conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible, her credibility is a question for the jury. *State* v. *Rice,* 83 W. Va. 409, 98 S. E. 432; *State* v. *Golden,* 90 W. Va. 496, 111 S. E. 320; Lee, The Criminal Trial in the Virginias, 2nd Ed., Section 1417. See generally A. L. R. annotation to *Noonan* v. *State of*

*Nebraska,* 117 Neb. 520, 221 N. W. 434, 60 A. L. R. 1118, 1125-1130. The rule applies though the testimony is flatly contradicted by the defense (*State* v. *Driver,* 88 W. Va. 479, 502, 107 S. E. 189) and conflicts with prosecutrix's purported statements to the witnesses White, Keesecker, Amanda Rockwell and those contained in her affidavit. *People* v. *Slaughter,* 33 Cal. App. 365, 165 P. 44.

Anna Beacraft, Harvey Rockwell and the defendant testified that the smokehouse over the celler in which prosecutrix testified the crime had been committed had been removed some time before the date of the alleged crime and the cellar filled with stone. Is then prosecutrix's testimony, in the light of this evidence, inherently incredible? On rebuttal prosecutrix explains her testimony in chief. She stated that the old smokehouse had been torn down when the Beacrafts moved on the farm, and that there remained an excavation about five feet deep with a canvas cover over it. We cannot say that the prosecutrix's testimony in chief, coupled with the explanation contained in her testimony on rebuttal and that of Dr. DuPuy, is inherently incredible. That being so, there is, in our opinion, sufficient evidence for the jury to find beyond a reasonable doubt, which it evidently did, that defendant committed the alleged crime, and therefore the trial court did not err as set forth in assignments of error Nos. 16 and 18. The testimony of the prosecutrix not being inherently incredible, the jury had the right to believe her, and we think it would be improper for this Court to substitute its opinion for that of the jury and the trial court. The advantages possessed by the jury and the trial court, in appraising the weight to be given to her testimony, are manifest.

Error is assigned to the refusal of the trial court to propound four of five interrogatories submitted by defendant's counsel. The four refused involve reasonable doubt, presumption of innocence, and degree of proof, which are proper subjects for instructions. The trial court *ex mero motu* made ample inquiry of the jury on its *voir dire.* Such inquiry in a criminal case is within the

sound discretion of the trial court and not subject to review, except when the discretion is clearly abused. *State v. Camp,* 110 W. Va. 444, 158 S. E. 664.

In the second assignment of error defendant complains that the prosecuting attorney made the following statement, claimed to be inflammatory, objectionable and prejudicial: "This defendant, of course, is a married man. He is forty-two years old. The evidence, we are confident, will be complete in every detail." Defendant objected and excepted to these remarks. Generally, in a prosecution for rape, it is a prejudicial error for the court to introduce evidence that defendant is a married man. *State v. Dorton,* 125 W. Va. 381, 24 S. E. 2d 455. But any error in the prosecuting attorney's remarks has been waived by defendant. On direct examination he and his wife testified, in answer to questions propounded by defendant's counsel, that they were married to each other. Moreover, the principle enunciated in *State v. Dorton, supra,* is inapplicable where, as in the instant case, the relationship between the prosecuting witness and the accused is such that it would be difficult to develop the case without disclosing that prosecutrix's mother is defendant's wife.

Defendant assigned error to the introduction of evidence tending to prove immoral relations between prosecutrix and defendant subsequent to the purported act upon which the State elected to rely. In a prosecution for rape, evidence of acts prior to that upon which conviction is sought is admissible to show that defendant entertained an improper disposition toward prosecutrix, and to corroborate evidence as to the particular act relied upon. *State v. Driver, supra,* 500; *State v. Lohm,* 97 W. Va. 652, 660, 661, 125 S. E. 758; II Wigmore on Evidence, 3rd Ed., Section 398; 44 Am. Jur., Rape, Section 80. Our attention has been directed to no West Virginia case, and we have found none, in which the admissibility of evidence of acts subsequent to the one sought to be proved as the basis for a conviction for rape has been considered. Outside this jurisdiction there is conflict of authority on the imme-

diate question. 44 Am. Jur., Rape, Section 81. In our opinion, such evidence tending to show acts identical with the act relied upon for conviction is admissible. See generally cases cited under Notes 2 and 3 of said Section 81.

Under Assignments of Error Nos. 5, 7, and 14, defendant complains of the trial court's refusal to permit defendant's counsel to cross-examine prosecutrix relative to the purported conversation with George Keesecker, concerning improper relations, if any, with "a man in Baltimore" and his relations with defendant; the court's action in sustaining the State's objection to the following question addressed to the witness Anna Beacraft: "I want you to state to the jury what her conduct was as indicating whether she was contented from that time until the arrest of defendant on March 16"; and the court's refusal to permit counsel to cross-examine Katheryne Payne, welfare worker in Berkeley County, concerning statements purported to have been made to the prosecuting witness by Circuit Judge Rodgers at a juvenile hearing. In all of these instances, the answers were not vouched in the record. Consequently, the court's action did not constitute reversible error. *State* v. *Clifford,* 59 W. Va. 1, 52 S. E. 981; *State* v. *Sixo,* 77 W. Va. 243, 255, 87 S. E. 267.

Assignment of Error No. 6 deals with the trial court's action in sustaining the State's objection to the following question addressed to the witness Lee White: "I want you to tell what the relations were between the stepfather and this stepdaughter while they were employed by you, as indicating any fear on her part of the defendant?" In view of the witness' answer: "I don't know of any", vouched in the record, the court's ruling was not prejudicial.

The trial court's refusal to permit the jury to view the Beacraft farm, suggested as error in Assignment No. 8, was within the exercise of the discretion of the trial court, and did not constitute error. Code, 56-6-17; *Simms* v. *Dillon,* 119 W. Va. 284, 297, 193 S. E. 331; *Gunn* v. *Ohio River Railroad Co.,* 36 W. Va. 165, 14 S. E. 465.

Assignments of Error Nos. 9 and 10 deal with the trial

court's action in refusing to let defendant testify as to prosecutrix's attitude toward him, during and after the juvenile court hearing. We need not say whether the answers refused admission into evidence are admissible or not, as prosecutrix's attitude toward defendant is amply shown in the record.

The trial court's refusal to give defendant's instructions Nos. 5, 6, and 10 is assigned as error (Assignments of Error Nos. 11, 12, and 13). These instructions are fully covered by other instructions. It is not error to refuse an instruction where the subject matter thereof is fully covered by other instructions. *State* v. *Driver, supra; State* v. *Rice, supra;* and *Taylor* v. *City of Huntington,* decided at this term of Court.

Under Assignment of Error No. 4 defendant complains that the prosecuting attorney asked prosecutrix leading questions and coached her, to defendant's prejudice, and that upon objection counsel for the State and defense engaged in a discourse and the court made statements in the presence of the jury which were prejudicial and erroneous. Examination of the record discloses that the prosecuting attorney volunteered the statement that the "first act of intercourse as this young girl understands it, not the completed act, happened at Katz's." Counsel for defendant objected "to the coaching of the witness", and the court stated that it thought that counsel overestimated "these questions of coaching and interpretation of words", and then related in substance some of the testimony of prosecutrix. Careful examination of the record in connection with this assignment of error leads to the conclusion that the assignment is without merit.

Defendant also complains of the trial court's action in overruling his objection to the following statement made by the prosecuting attorney in closing argument: "Let's stop this thing in this community, gentlemen". This remark, though not material to the issues involved, in our opinion was not prejudicial.

Under Assignment of Error No. 17, defendant asserts that the judgment of the trial court is erroneous in that it

provides for an indeterminate sentence of five to twenty years. The jury having found defendant guilty of rape, with recommendation of mercy, the defendant should have been sentenced to a definite term of not less than five nor more than twenty years. Code, 61-2-15. This error merits reversal only for the purpose of having the judgment of sentence corrected. *State* v. *Fisher,* 126 W. Va. 117, pt. 5 syl., 27 S. E. 2d 581.

The judgment of the circuit court is therefore reversed and the case remanded for entry of a proper judgment of sentence upon the verdict.

*Reversed and remanded.*

LOVINS, JUDGE, dissenting:

I respectfully dissent from the views expressed in the majority opinion in two particulars: (1) The evidence, in my opinion, is insufficient for a jury to find beyond a reasonable doubt that defendant had sexual intercourse with prosecutrix on the date and at the place upon which the State elected to rely: in the cellar under defendant's smokehouse a short time after Christmas, 1941; and (2) the evidence tending to prove that defendant had immoral relations with prosecutrix at times subsequent to the purported act upon which the State elected to rely is inadmissible.

Prosecutrix testified in chief that "He [defendant] told my mother to clean up the house and wash the dishes and he told my brother to hull some beans while we went to the cellar to separate potatoes. We went down to separate the potatoes. He [defendant] had intercourse there", and in response to the question "He took you down in the cellar?", she responded, "Yes, sir." As stated in the majority opinion, "Anna Beacraft, Harvey Rockwell and the defendant testified that the smokehouse over the cellar in which prosecutrix testified the crime had been committed had been removed some time before the date of the alleged crime, and the cellar filled with stone." Anna Beacraft testified that at the time of the alleged crime no

potatoes were kept upon the home premises and that the Beacrafts stored their potatoes in a neighbor's cellar some distance away. On rebuttal prosecutrix attempted to explain her testimony in chief. Her attempted explanation, in my opinion, is in fact contradictory to her testimony in chief. She testified that the old smokehouse had been torn down when the Beacrafts moved on the farm, leaving an excavation about five feet deep, which at the time of the alleged act was covered with canvas. The testimony of the State's witness Bell given on rebuttal was, as he testified, based in part on what other people told him. He stated that he had not closely observed the situation. In the main his testimony lacks definiteness and certainty, and merits little weight. Moreover, prosecutrix is clearly contradicted by her own affidavit. This affidavit was obtained by a lawyer of reputable standing at the bar of this Court, and the record discloses that prosecutrix in executing it was free from any coercion by the attorney or the notary. Dr. DuPuy's testimony is simply to the effect that a physical examination of prosecutrix disclosed that she had had sexual intercourse frequently over a period of time, but that testimony does not establish that the acts of intercourse were had with defendant. In my opinion, the evidence in this case bearing on the question whether defendant was guilty of rape upon prosecutrix in the cellar of the smokehouse of the Beacraft property shortly before Christmas, 1941, considered with the conflict in plaintiff's testimony in chief and her affidavit and testimony on rebuttal does not sustain the State's position. I think the State's evidence lacks plausibility and credence to such an extent as to bring this case within the decisions of this Court in *Acree* v. *Pipe Line Co.*, 122 W. Va. 242, 8 S. E. 2d 186, and *Owen* v. *Power Co.*, 78 W. Va. 596, 89 S. E. 262. In the *Acree* case this Court held: " 'Courts are not required to believe that which is contrary to the human experience and the laws of nature, or which they judicially know to be incredible * * *.' "

The evidence introduced by the State tending to prove

that defendant had immoral relations with prosecutrix on dates subsequent to the time of the alleged crime, in my opinion, is inadmissible. It is true, as stated in the majority opinion, that in this State evidence of acts prior to that upon which conviction for rape is sought, is admissible to show that defendant entertained an improper or lustful disposition toward prosecutrix, and to corroborate the evidence bearing on the particular act relied upon. *State* v. *Driver*, 88 W. Va. 479, 500, 107 S. E. 189; *State* v. *Lohm*, 97 W. Va. 652, 660, 661, 125 S. E. 758. But evidence of subsequent acts does not tend to establish that defendant entertained an improper disposition toward defendant before or at the time of the alleged act. Proof of subsequent acts is nothing more than giving evidence of an offense distinct from that relied on by the State. There is but one issue before the jury: Is the defendant guilty of the offense at the time and place relied on by the State? Evidence of subsequent acts would have the effect of confusing the issue. On this question, as stated in the majority opinion, there is a conflict of authority. 44 Am. Jur., Rape, Section 81. The trial court, I think, committed reversible error in allowing the introduction of evidence relative to acts of sexual intercourse subsequent to the time of the alleged act on which the State relies for a conviction.

For the two foregoing reasons I would reverse the judgment of the trial court.

Judge Riley concurs in this dissent as to the first ground only.