# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0126** (Wayne County 11-F-027)

**Warner Lee H.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Warner Lee H.,[1] by counsel Matthew Brummond, appeals the sentencing order of the Circuit Court of Wayne County entered on December 22, 2011. Following a jury trial, petitioner was convicted of twenty-three counts of sexual abuse by a custodian or parent and eleven counts of pornography. The State, by counsel the Office of the Attorney General, filed a summary response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

From August of 2008 through April of 2010, petitioner lived with his girlfriend, Tammy W., and her two children, one of whom was the victim, eleven-year-old K.W. Tammy W. worked the evening shift at a local hospital four days a week. Petitioner acted as babysitter for the children in her absence. On multiple occasions, petitioner waited for Tammy W. to leave for work, locked the door, set the home alarm, and traded privileges (a later bedtime, use of the cell phone, and the like) for sexual favors from K.W. On multiple occasions petitioner showed pornography to K.W.

In March or April of 2010, K.W. told two of her close friends about the sexual abuse. The friends took their concerns to the school counselor because K.W. was afraid to report petitioner. The counselor and the principal talked with K.W. and immediately contacted Child Protective Services and the police. Petitioner was arrested and indicted for the abuse as noted above.

Petitioner's trial began on October 17, 2011, and spanned five days. The State called nine

---

[1]In view of the sensitive nature of this case, this Court will refer to certain individuals by their initials or first name and last initial. *Clifford K. v. Paul S.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005).

1

witnesses to testify including the victim and her mother. The defense called two witnesses, one of whom was petitioner. He denied the charges and stated K.W. was lying.

The jury convicted petitioner on all counts in the indictment. Petitioner received an effective indeterminate sentence of fifty to one hundred years on the twenty-three sexual abuse counts,[2] to be followed by a determinate sentence of fifty-five years on the eleven pornography counts.[3]

Asking for a new trial, petitioner raises two assignments of error. First, petitioner contends that he was denied adequate voir dire when the court refused to ask all of the questions needed to intelligently exercise his peremptory strikes and which also could have led to strikes for cause.[4] The State argues in response that the trial court did not commit error in refusing some of the questions, noting that petitioner's counsel had submitted seventy proposed voir dire questions. Although the trial court did not ask all of petitioner's questions, voir dire was

---

[2]Petitioner was sentenced to ten to twenty years on each of the twenty-three counts, with four sentences set to run consecutively to the other nineteen.

[3]Petitioner was sentenced to five years on each of the eleven counts, all set to run consecutively to the indeterminate sentence and to each other.

[4]The court excluded the following voir dire questions submitted by petitioner finding they were argumentative and not appropriate for the purpose of determining the impartiality of the jury:
1. How many of you will get upset if the child gets mad or angry when I question them?
2. Will you hold it against my client because I have to question the child?
3. Is there anyone here who believes that children do not lie?
4. Is there anyone here who believes that a child will not lie about something as serious as being molested?
5. Is there anyone here who believes that leading and suggestive questioning of a child by an interviewer cannot prompt a child into making a false allegation of sexual abuse?
6. How many of you believe children can confuse or exaggerate answers when questioned by upset adults?
7. Does anyone not believe that some children tend to want to please authority figures?
8. Is there anyone here that does not believe that someone can be falsely accused of child abuse?
9. Is it appropriate to err on the side of safety when dealing with children?
10. How many of you believe it is impossible to prove something that did not happen?
11. During deliberations, will anyone feel compelled to change their vote based solely on the fact that their view is the minority or is perhaps the only such view?

extensive, and lasted for hours. Furthermore, counsel engaged in follow-up questioning of individual jurors when appropriate.

We note the following standard of review regarding a challenge to the manner in which a trial court conducted voir dire:

> "In a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl.pt. 2, *State v. Beacraft*, 126 W.Va. 895, 30 S.E.2d 541 (1944), *overruled on another point*, syl. pt. 8, *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

> In a criminal case the trial court's conduct of the voir dire is not reversible error if it is conducted in a manner which safeguards the right of a defendant to be tried by a jury free of bias and prejudice. Accordingly, it is not reversible error in a criminal case for a trial court to refuse to ask questions submitted for voir dire by the defendant if such questions are substantially covered by other questions asked by the trial court.

Syl. Pts. 9 and 10, *State v. Dietz*, 182 W.Va. 544, 390 S.E.2d 15 (1990).

Based on this standard, we find the trial court did not abuse its discretion in refusing some of the questions submitted the petitioner. A review of the transcript reveals voir dire was conducted in a manner which safeguarded petitioner's right to be tried by a jury free of bias and prejudice.

Petitioner's second assignment of error is that the State usurped the jury's fact-finding role by prompting two of the State's witnesses to testify that the victim was credible. However, because the defense did not object to any of the questions or answers it now assigns as error on appeal, this issue must be reviewed under the plain error doctrine: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial right; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). The error raised by petitioner fails to meet the *Miller* test because the fairness of the proceedings was not compromised.

At issue regarding this alleged error is the following exchange:

(Witness Mark Hayes, K.W.'s guidance counselor, on direct examination by the State)

Q:      Did you believe that what she was telling you was credible?

A:      I had no reason to not believe her. She seemed very sincere.

Q:      How did [K.W.] react when she was telling you this?

3

A:      She, maybe, was nervous at first, but I think she felt glad to get it off of her chest. She just was very forthcoming in telling me what was going on.

(Witness Hayes, on redirect examination by the State)

Q:      Mr. Hayes, you said you found what she said to be credible, the way she told the story.

A:      Yes.

Q:      In your experience, have you been told stories like this that you did not find to be credible?

A:      I mean, I'm sure I've had suspicion whether some of them was truthful, or not.

Q:      Okay. But, you didn't have that in this case, did you?

A:      No.

(Witness Christi Byrd, CPS worker, on direct examination by the State)

Q:      Now did the reports that [K.W.] made – would give to you, were they consistent based upon your training and experience with someone who had suffered sexual abuse?

A:      They were.

There is no question that the inquiry relative to the victim's credibility was improper and may have invaded the province of the jury.[5] *See* Syl. Pt. 2, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967); Syl. Pt. 2, *State v. Martin*, 224 W.Va. 577, 687 S.E.2d 360 (2009).  However, despite this lapse of judgment by the State, we find no reversible error because the instances of bolstering were so fleeting as to be harmless. The defense complains about five brief questions of two witnesses during a trial that spanned five days and encompassed the testimony of eleven witnesses. Furthermore, defense counsel aggressively cross-examined both witnesses who expressed opinions as to K.W.'s credibility in an attempt to support his theory that K.W. was a liar.

Having fully considered the record before us, this Court finds no reversible error. For the foregoing reasons, we affirm petitioner's criminal convictions as set forth in the December 22, 2011, order of the Circuit Court of Wayne County.

---

[5]With respect to Ms. Byrd, the parties agree that her testimony does not fall within the ambit of *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990), because the question and her answer were based on K.W.'s report, and not on Ms. Byrd's psychological and behavioral profile.

4

Affirmed.

**ISSUED:** May 17, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II