**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 21-0487** (Ohio County 19-F-47)

**William T.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner William T., by counsel Justin M. Hershberger, appeals the May 18, 2021, order of the Circuit Court of Ohio County sentencing him to 25 to 100 years in prison for his conviction of first-degree sexual assault, under West Virginia Code § 61-8B-3(a)(2), and 10 to 20 years in prison for his conviction of sexual abuse by a custodian, in violation of West Virginia Code § 61-8D-5(a), with the sentences to be served concurrently.[1] The State of West Virginia, by counsel Patrick Morrisey and Andrea Nease Proper, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 18, 2018, four-year-old K.P. disclosed to her paternal grandmother that her aunt's boyfriend, petitioner, had previously stuck his penis in her "butt" and "peed" on her while she and her mother were living in the aunt's home.[2] In May of 2019, petitioner was indicted by a grand jury of one count of first-degree sexual assault and one count of sexual abuse by a custodian.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The child also made some disclosures of sexual acts by her mother; however, the mother was never criminally charged.

Petitioner filed a motion in August of 2019 requesting that the circuit court utilize a juror questionnaire, arguing that "allegations involving sexual abuse of minors warrant a more thorough, comprehensive, and exhaustive exploration of the prospective jury panel." Petitioner further argued that a questionnaire would provide all of the jurors "a private opportunity to review, reflect upon, and provide a more well-reasoned response than would otherwise be expected in the public setting." Petitioner's motion was addressed at a pre-trial hearing held in October of 2020, at which time petitioner argued that the questionnaire would be "extremely helpful" given the COVID-19 pandemic. Petitioner explained that a questionnaire would allow for questions "regarding the general nature of feelings on sex cases." Ultimately, the court denied the motion, finding that petitioner was not entitled to a jury questionnaire and that, in the opinion of the court, jury questionnaires tended to "tempt jurors to answer questions in ways to avoid service." However, the court stated that it intended to provide the jurors with a COVID-19 questionnaire and stated that it would "liberally allow questioning to make sure we seat a fair and unbiased jury."

Petitioner's trial commenced in March of 2021. To comply with COVID-19 protocols, the circuit court conducted voir dire in two panels. The court asked several questions and provided the prospective jurors the opportunity to answer potentially embarrassing or sensitive questions in chambers, which occurred on several instances.

The jury heard the testimony of several witnesses: the child victim's paternal grandmother, the child's maternal aunt, the child's mother, the child's father, a nurse, the child, and a law enforcement officer. The grandmother explained that the child's parents were separated and that the child split her time living with her father (who lived in the grandmother's home) and the mother who then lived with the mother's sister and petitioner. The grandmother stated that, on July 21, 2018, the child disclosed that she did not want to return to her aunt's home because petitioner had an "accident" and made her sad. Upon further questioning by the grandmother, the child stated that petitioner put his penis in her butt and peed on her. The grandmother testified that she immediately called the child's father to report what the child had disclosed, and then called law enforcement. The grandmother acknowledged that the child also disclosed other sexual knowledge and/or abuse surrounding her mother.

The child's maternal aunt and the child's mother both testified that the child and her mother lived in the aunt's home prior to the child's disclosures. The child's aunt stated that petitioner frequently watched the child by himself while she and the child's mother were working. Both the aunt and the mother said that the child would sleep in the beds of others in the home because she was afraid of the dark. The aunt stated that, on some occasions, she would awake to find the child in bed with her and petitioner. The aunt further indicated that there was no bed in the living room, where the abuse was alleged to have occurred.

Regarding the child's disclosure, the mother testified that she was in Louisiana for a wedding and that she spoke to the child on the phone after the child had made the disclosure to her grandmother. According to the mother, the child reported that petitioner put his penis in her butt and peed on her. The mother acknowledged that the child likely knew "a little too much for her age about sexual matters" but denied any allegations that she had sexually abused her daughter.

The child's father testified that, on the night of the disclosures, his mother called him at work to report what the child had disclosed. The father testified that he left his place of employment and sought out petitioner and engaged in a physical altercation with him. The father testified that, following the altercation, he proceeded to pick up the child from the grandmother's home and take her to the hospital to be examined. The father stated that he did not ask or pressure his daughter to report the abuse to him, but that, a few days later, she informed him that petitioner had put his penis in her butt.

The nurse testified that late on the night of July 21, 2018, or in the early morning of July 22, 2018, she was working in the emergency department of a local hospital when the child was brought in for a sexual assault assessment. The nurse testified that the child disclosed that her "uncle" pulled down his pants and underwear, grabbed her hips and pulled her towards him, pulled down her pants, and put his penis in her butt. The child also demonstrated how petitioner had grabbed her hips and pulled her towards him. The nurse testified that the child reported the incident had occurred a "couple" months prior and given the length of time, she did not attempt to collect any biological evidence.

The child, then seven years old, testified that petitioner put his "private part" in her butt one evening while her aunt and mother were out of the home. While on the stand, the State tendered anatomical drawings of a female and male body to the child and asked her to circle which body parts were involved in the incident. The child circled the butt of the female body and the penis of the male body. She also testified that petitioner's actions "felt really bad" and that she cried. On cross-examination, the child reported that the abuse occurred on a bed in the living room. Further, she denied reporting any sexual abuse or related disclosures against her mother. On redirect, the child described that the bed in the living room looked like an air mattress.

A law enforcement officer testified to his investigation into the child's disclosures against petitioner. According to the officer, the child underwent two forensic interviews at a local child advocacy center and her disclosures of abuse during the interviews were consistent with the testimony presented. The officer testified that he interviewed the child's mother and aunt, both of whom reported that the child was cared for at times by petitioner. The officer also interviewed petitioner, who reported that the child lived in his home and had slept in the same bed as him on occasion but denied any allegations of sexual abuse. On cross-examination, the officer acknowledged that the child had made disclosures of sexual knowledge and claims surrounding her mother during her forensic interviews. He further acknowledged that during one of the forensic interviews, the child denied that petitioner "peed" on her butt. However, the officer stated that the child consistently disclosed that petitioner put his penis in her butt.

Following the State's case in chief, petitioner made a motion for a judgment of acquittal, arguing that the State failed to meet its burden in proving the case. Petitioner argued that there was inconsistent testimony of where the incident occurred and that no other testimony confirmed that there was a bed as described by the child in the living room of the home. Petitioner further argued that the child was not trustworthy given her testimony that she did not make any disclosures against her mother around the same time as the disclosures against petitioner. Ultimately, the circuit court denied the motion, finding that the testimony and exhibits presented were sufficient for "a reasonable jury to conclude guilt." Petitioner did not put on any evidence.

After deliberations, the jury found petitioner guilty of both counts charged. Petitioner made a motion for a judgment as a matter of law, which the circuit court denied, finding that the discrepancies raised by petitioner did not go to the heart of the elements of the crimes charged and that sufficient evidence had been presented to prove each element of the crimes.

The circuit court held a sentencing hearing in May of 2021. Petitioner asked the court to order that the sentences run concurrently rather than consecutively. The court sentenced petitioner to an indeterminate term of 25 to 100 years of incarceration for his conviction of first-degree sexual assault and an indeterminate term of 10 to 20 years of incarceration for his conviction of sexual abuse by a custodian, with the sentences to be served concurrently. Petitioner appeals the May 18, 2021, sentencing order.

On appeal, petitioner first argues that the circuit court abused its discretion when it denied petitioner's motion for a pre-trial jury questionnaire. Petitioner asserts that a jury questionnaire would have been appropriate for two reasons. First, according to petitioner, the jury questionnaire would have reduced the time the jurors spent in close proximity in the courtroom due to the COVID-19 pandemic. Petitioner contends that "[a]nxiety about contact with strangers is here to stay for the foreseeable future" and that courts "must adapt to make sure potential jurors are comfortable and relaxed to be able to produce the most accurate and thoughtful answers to voir dire." Second, the facts of the underlying case deal with the sexual abuse of a child—a topic some people are not comfortable discussing in a room full of strangers. Petitioner avers that "[e]ven being asked to confirm or deny experiences [with sexual abuse] in open court so that they may be discussed in chambers may be too much for some people." By allowing a questionnaire, the court would have ensured that the jurors felt comfortable providing thoughtful answers to sensitive questions and further questioning could have occurred in chambers without first subjecting the jurors to answering in open court. Petitioner claims that, by denying such a questionnaire, the court prevented him from determining whether the jurors were free from interest, bias, or prejudice and hindered his exercise of peremptory challenges.

We have previously held that "[i]n a criminal case, the inquiry made of a jury on its voir dire is within the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused." Syl. Pt. 2, *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944), *overruled on other grounds by State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986). Further, "[t]o succeed on an abuse of discretion claim regarding the judicial management of a criminal trial, a defendant must point to a specific rule or statutory violation and then must show that the measures or procedures taken by the trial judge either actually or inherently were prejudicial." Syl. Pt. 3, *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535 (1996).

Here, petitioner fails to demonstrate any abuse of discretion by the circuit court in denying his motion for a jury questionnaire and further fails to point to any specific rule or statutory violation regarding jury questionnaires. In fact, "[t]here is no authority requiring a court to issue the requested juror questionnaire to jurors during voir dire." *State v. Elswick*, 225 W. Va. 285, 299, 693 S.E.2d 38, 52 (2010). To the extent that petitioner argues that a jury questionnaire was warranted given the ongoing COVID-19 pandemic, we note that the court did implement a COVID-19-related questionnaire, which was designed to prevent those in high-risk categories

4

from coming to the courthouse, and also conducted the voir dire of the jurors in two panels so as to limit any contact and exposure. Further, petitioner fails to submit any evidence that the composition of his jury was unfair, that a juror who sat on the jury was biased, or that he was denied his right to a fair trial. Rather, petitioner asks this Court to speculate that the jurors were uncomfortable answering questions about their own alleged experiences with sexual abuse. Because petitioner failed to provide any credible evidence of juror bias or prejudice, we find no merit to his argument. *See State v. Younkins*, No. 17-0962, 2018 WL 5099641, at *3 (W. Va. Oct. 19, 2018)(memorandum decision) (finding that defendant failed to present evidence of bias or prejudice in jury that heard case). Moreover, petitioner also fails to cite to any portion of the record demonstrating that he requested or needed additional peremptory challenges during voir dire. Accordingly, we find that petitioner has failed to establish that the court erred in refusing to implement his proposed questionnaire. *See State v. Gibbs*, 238 W. Va. 646, 655, 797 S.E.2d 623, 632 (2017) (finding no abuse of discretion in the circuit court's denial of the two petitioners' motions to sever, thereby forcing them to share peremptory strikes when they failed to request additional peremptory strikes or demonstrate that the composition of the jury was unfair).

Petitioner next argues that the verdict was against the weight of the evidence. First, petitioner argues that the child's testimony and statements indicate that the alleged abuse occurred on a bed in the living room, at one point describing the bed as an air mattress. However, the child's aunt, the owner of the home, denied the existence of any bed in the living room. Moreover, the State offered no other proof of the existence of a bed or air mattress in the living room. Petitioner states that the child's inability to recall other allegations of abuse she made against her mother around the same time as her disclosures of abuse by petitioner is also troubling, given that several witnesses acknowledged that the child had made such disclosures, but the child later denied any such disclosures during the trial below. Petitioner contends that "[i]t appeared her only recollection was of the allegations against the Petitioner and not any other party. This defies all logic and believability." Petitioner concludes that, given the lack of physical evidence, the incredible and unbelievable testimony, and the absence of any bed in the living room, no rational trier of fact could find that the State met its burden of proof beyond a reasonable doubt.

We disagree and find that the evidence adduced at petitioner's trial was sufficient to prove the crimes charged beyond a reasonable doubt.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). "[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *Id.*, at 663, 461 S.E.2d at 169, Syl. Pt. 1, in part. "[A] jury verdict should be set aside only

5

when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.*, at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

To obtain a lawful conviction for first-degree sexual assault under West Virginia Code § 61-8B-3(a)(2), the State must prove that the defendant "being fourteen years old or more, engage[d] in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person." Further, to obtain a conviction for sexual abuse by a custodian under West Virginia Code § 61-8D-5(a), the State must prove that the defendant, a

> parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, [who] engage[d] in or attempt[ed] to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control.

Here, the State produced uncontested evidence satisfying the elements of both crimes charged. At trial, the child testified that petitioner inserted his private area (which was demonstrated to be his penis through a drawing) into her anus. The child's grandmother, the child's mother, the child's father, the treating nurse, and the investigating officer testified that the child had consistently disclosed this specific act. The evidence also showed that petitioner frequently cared for the child alone while the aunt and the mother were working and that the child had been in bed with petitioner on a few occasions. Further, the ages of petitioner and the child, as well as their lack of marital relationship, is undisputed. This evidence, when viewed in the light most favorable to the prosecution, is sufficient to satisfy the elements of both crimes charged. While petitioner argues that the child's testimony was incredible and inconsistent and that no definitive evidence of a bed in the living room was presented, these were credibility issues the jury assessed. *See State v. Horne*, No. 14-0658, 2015 WL 1741146, at *5 (W. Va. Apr. 10, 2015)(memorandum decision) (stating that "matters of witness credibility and resolving inconsistencies in testimony are within the sole province of the jury."). Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 18, 2021, order is hereby affirmed.

Affirmed.

**ISSUED:** August 31, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

6