**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 23-542** (Wood County No. CC-54-2023-F-63)

**Robert Burl Vance,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Robert Burl Vance appeals his conviction and sentence for two counts of first-degree sexual abuse as set forth in the Circuit Court of Wood County's sentencing order entered on August 17, 2023.[1] The petitioner argues that the circuit court erred by rejecting a proposed plea agreement; denying the petitioner's motions for judgment of acquittal and for a new trial based on, among other things, sufficiency of the evidence; refusing to grant alternative sentencing; and ordering his sentences to run consecutively with a period of supervised release to follow his discharge from incarceration. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

On January 12, 2023, the Wood County Grand Jury returned a two-count indictment against the petitioner, charging him with two counts of first-degree sexual abuse[2] against sixteen-year-old J.M.B.[3] Specifically, the indictment alleged that the petitioner intentionally touched J.M.B.'s breasts and buttocks through her clothing for the purpose of sexual gratification, without J.M.B.'s consent, and that the lack of consent resulted from forcible compulsion.

The State and petitioner were unable to reach a plea agreement until the day before trial. At that time, they presented a binding plea agreement to the circuit court, which proposed that the petitioner would plead guilty to a single misdemeanor charge of sexually motivated battery, serve

---

[1] The petitioner is represented by counsel Reggie R. Bailey. The State of West Virginia is represented by Attorney General John B. McCuskey and Deputy Attorney General Andrea Nease. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] *See* W. Va. Code § 61-8B-7(a)(1).

[3] J.M.B. was the child of the petitioner's daughter's boyfriend.

1

one year of home incarceration, and register as a sex offender for life. The State confirmed that J.M.B. consented to the proposed plea agreement so long as the petitioner was required to register as a sex offender. After taking a recess to consider the terms of the plea agreement, the court ultimately rejected it. The court reasoned that, in addition to being presented "very late," the proposed agreement reduced two felony charges to a single misdemeanor charge, required the court to impose a term of home incarceration without the benefit of first reviewing a presentence investigation report ("PSI"), and did not provide for supervised release, all of which led the court to conclude that the proposed agreement "does not appear to be in the best interest of the public."

The petitioner's jury trial commenced as scheduled on the morning of June 13, 2023. At the petitioner's request, the court sequestered the witnesses. J.M.B.'s mother testified that on the evening of July 24, 2022, J.M.B.'s father took J.M.B. to a barbeque at the home of the petitioner and his wife. Later that evening, the mother picked J.M.B. up from the barbeque and observed that J.M.B. appeared "very odd" and was "acting very weird." The mother testified that she asked J.M.B. what was wrong and J.M.B. responded that she "[did not] want to talk about it." However, later that evening J.M.B. disclosed that the petitioner had "touched her where it was very uncomfortable" on a couple of occasions while at the barbeque. The mother testified that around 8:00 a.m. the following morning, she took J.M.B. to file a report at the police station. Relevant to the petitioner's claims, the mother also testified that as of the date of the barbecue, J.M.B. had been grounded with loss of phone privileges for a month or two because her mother discovered that J.M.B. owned a vape.

Next, Sergeant Jacob Edwards of the Wood County Sheriff's Office testified that he took statements from J.M.B. and her mother regarding events at the barbeque. Sergeant Edwards testified that he recommended that J.M.B. should be interviewed at the Children's Listening Place ("CLP"). After J.M.B. was interviewed at the CLP, Sgt. Edwards obtained an arrest warrant based on his investigation and interviews with J.M.B. and her mother and arrested the petitioner. Sgt. Edwards testified that at the time of the petitioner's arrest, the petitioner admitted to hugging J.M.B. at the barbeque, but denied any inappropriate touching, and further stated that he had "consumed a 12 pack" of beer at the event. During Sgt. Edwards' testimony, the State entered into evidence pictures of the home and yard.

J.M.B. testified that on the evening of July 24, 2022, her father picked her up from work and took her to the petitioner's home for a barbeque. J.M.B. stated that once she arrived, the petitioner began "hugging [and kissing] on [her], holding me down," which she described as typical behavior for the petitioner. According to J.M.B., later that evening, she went to stand alone on a street next to the property because the petitioner "wouldn't leave [her] alone." J.M.B. testified that the petitioner approached her from behind, wrapped his arms around her, and began grabbing her buttocks, and breasts, and nibbling on her ear. J.M.B. testified that she told the petitioner to stop but that he continued to grab at her buttocks and breasts. Eventually, she was able to push the petitioner away and then spent the rest of the evening next to her father in order to avoid the petitioner. J.M.B.'s mother picked J.M.B. up from the barbeque, and J.M.B. told her mother about the abuse later that night. When asked why she had been grounded the night of the barbecue, J.M.B. stated it was regarding an incident with her boyfriend.

The State rested its case following J.M.B.'s testimony,. The petitioner moved for a judgment of acquittal, arguing that the incident could not have happened as J.M.B. testified, as the abuse allegedly occurred in the middle of an open street next to the barbeque, within eyesight of numerous guests who would have witnessed the alleged abuse. The court denied this motion.

Sarah Vance, the petitioner's wife, testified that when J.M.B. first arrived at the barbecue, she was crying and would not respond to questions. Mrs. Vance recalled that for most of the evening, the petitioner was "sitting on the other side of [J.M.B.] . . . drinking his beer," and she opined that the petitioner probably drank about twelve beers throughout the evening. Ms. Vance testified that she was able to see the petitioner the entire evening and that she only noticed him grab J.M.B. by the hand to have her help the petitioner put more wood on the bonfire.

The petitioner testified that he and his wife hosted a barbecue on the evening of July 24, 2022, and that many family members and neighborhood children were present. According to the petitioner, J.M.B. was noticeably upset and crying when she arrived that evening, and he later approached her to ask her what was wrong. The petitioner claimed that during the bonfire, he grabbed J.M.B.'s back to kiss her on her forehead. When questioned about the kiss, the petitioner stated that he regularly hugged and kissed all of his grandchildren, and that he considered J.M.B. to be one of his grandchildren. He also admitted to grabbing J.M.B.'s hand and pulled her to help him with firewood. However, the petitioner denied putting his arms around J.M.B.'s chest, shoulders, or waist, and further denied touching her breasts or buttocks.

The jury found the petitioner guilty of both counts of first-degree sexual abuse. After trial, the petitioner underwent a psychological evaluation and psycho-sexual risk assessment, which placed him at low risk for reoffending. The petitioner filed post-trial motions for a judgment of acquittal and a new trial, arguing that the court erred by (1) rejecting the proposed plea agreement, (2) permitting Sgt. Edwards to testify regarding the petitioner's arrest, (3) permitting J.M.B. to remain in the courtroom after her testimony concluded, and (4) allowing the State to vouch for J.M.B.'s credibility as a witness during its closing arguments. The petitioner also argued that the verdict was against the weight of the evidence because J.M.B.'s testimony that the abuse occurred in such a public area was improbable and the conflicting testimony provided by J.M.B. and her mother regarding why J.M.B. was grounded called their credibility as witnesses into question.

At the sentencing hearing held on August 17, 2023, the petitioner presented arguments in support of his motions and requested that the circuit court grant him alternative sentencing based upon the psychological evaluation that placed him at low risk for reoffending, or alternatively, that the court sentence him to concurrent sentences. The court denied the motions and, finding no error in the proceedings, noted that the jury was the "arbiter[] of credibility of witnesses" and that it had resolved credibility determinations in favor of the State and its witnesses. The court further noted that "these are very serious charges" that have "had a profound impact on the child and the child has suffered greatly." The court also expressed concern that the petitioner did not take responsibility for his actions. Accordingly, by order entered on August 21, 2023, the circuit court sentenced the petitioner to consecutive terms of one to five years of imprisonment for each of the two counts of first-degree sexual abuse and ordered twenty-five years of supervised release.

On appeal, the petitioner presents multiple issues for this Court's consideration. Given the various standards of review applicable to the different issues presented, specific standards of review will be discussed in relation to the alleged errors to which they pertain.

In his first assignment of error, the petitioner alleges that the circuit court erroneously rejected the proposed plea agreement primarily because it was presented on the day before trial and because the petitioner would not have been subject to supervised release, both of which he asserts were impermissible reasons to reject the proposed plea agreement. "West Virginia Rules of Criminal Procedure, Rule 11, gives a trial court discretion to refuse a plea bargain." Syl. Pt. 5, *State v. Guthrie*, 173 W. Va. 290, 315 S.E.2d 397 (1984). Accordingly, our review of a circuit court's decision to accept or reject a plea agreement is guided by "whether it is consistent with the public interest in the fair administration of justice." Syl. Pt. 4, in part, *Myers v. Frazier*, 173 W. Va. 658, 319 S.E.2d 782 (1984).

Upon review, we conclude that the circuit court did not err in rejecting the proposed plea agreement. The record reveals that the circuit court questioned the parties at length regarding the terms of the plea agreement, noting several concerns, before recessing to consider the matter and, ultimately, rejecting the proposed agreement. While the court briefly noted that the proposed plea agreement was presented to the court on the eve of trial, after the jury had been selected and prepared, the court stated that it was refusing the plea agreement based on public interest concerns. Specifically, the court noted that (1) imposing a sentence of home confinement would "tak[e] the sentencing decision away" from the court before it could review the PSI report and decide "what's in the best interest of the public," and (2) reducing the two felony counts to a single misdemeanor removed the possibility of supervised release, meaning once the petitioner had served his proposed term of one year of home confinement, he would be "free from any obligations of the court, other than registering as a sex offender." The circuit court specifically concluded that "this plea deal does not appear to be in the best interest of the public." Accordingly, we find no merit to the petitioner's argument that the circuit court erred in rejecting the proposed plea agreement solely on the issue of timing, as the record reflects that the court's primary concern was that the proposed agreement was not "consistent with the public interest in the fair administration of justice." *See Myers*, 175 W. Va. at 665, 319 S.E.2d at 790, Syl. Pt. 4, in part.

In the petitioner's second, third, fourth, and fifth assignments of error, he argues that the evidence was insufficient to sustain his convictions, as J.M.B.'s testimony was "inherently unreliable," and, as such, the circuit court should have granted his motions for a judgment of acquittal and new trial. The petitioner contends that he was to be presumed a competent and credible witness, implying that the jury should have weighed the evidence in his favor when presented with J.M.B.'s incredible testimony. Specifically, the petitioner points to alleged inconsistencies in J.M.B.'s testimony, noting that she and her mother provided conflicting testimony regarding why J.M.B. was grounded at the time of the barbecue and pointing out that J.M.B.'s account of the event was improbable, as the abuse would have necessarily occurred in view of several other guests. The petitioner also emphasizes that J.M.B. did not report the alleged abuse to her father, who was present at the barbeque when the abuse allegedly occurred. Therefore, the petitioner contends that because J.M.B.'s testimony was "inherently unreliable," there was "insufficient evidence to show that [he] touched the breast or buttocks of J.M.B."

4

We apply a de novo standard of review when reviewing the circuit court's denial of the petitioner's motion for judgment of acquittal, *see State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011), and an abuse of discretion standard of review when reviewing the circuit court's denial of the petitioner's motion for a new trial. *See State v. Hoard*, 248 W. Va. 428, 437, 889 S.E.2d 1, 10 (2023). Further, we have ruled that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Applying these standards to the facts of this case, we conclude that the petitioner has not met his burden of establishing that the evidence was insufficient to support his convictions. West Virginia Code § 61-8B-7(a)(1) provides that a person is guilty of first-degree sexual abuse when he or she "subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion[.]" Here, J.M.B. testified that the petitioner approached her at the barbecue while she was standing alone and grabbed her buttocks and breast. J.M.B. stated that she told the petitioner to let go and tried to pull away from him, but he continued to grab her buttocks and breast before she was eventually able to pull away. J.M.B. reported the petitioner's actions in a consistent manner both to her mother later that same evening and to Sgt. Edwards the following day. Both J.M.B.'s mother and Sgt. Edwards testified that J.M.B. reported the abuse and appeared distraught and upset over the incident. While the petitioner claims that J.M.B.'s testimony was full of inconsistencies and inherently unreliable, the petitioner's counsel cross-examined J.M.B. and the State's other witnesses about these alleged inconsistencies at trial and the jury ultimately resolved the issue in favor of the State. Credibility determinations will not be disturbed by this Court on appeal. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part (holding that "[c]redibility determinations are for a jury and not an appellate court"). Our law has been clear for many years that the uncorroborated testimony of a victim is sufficient to sustain a conviction for a sexual offense if the testimony is not inherently incredible. *See* Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981) ("A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury."); *see also State v. Haid*, 228 W. Va. 510, 721 S.E.2d 529 (2011); Syl. Pt. 4, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979) ("A conviction for rape may be had on the uncorroborated testimony of the female, and unless her testimony is inherently incredible, her credibility is a question for the jury."); *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944), *overruled on other grounds by State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986); *State v. Golden*, 90 W. Va. 496, 111 S.E. 320 (1922); *State v. Rice*, 83 W. Va. 409, 98 S.E. 432 (1919). Accordingly, viewing this evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support the petitioner's convictions for first-degree sexual abuse. Given the foregoing, we find that the circuit court did not err in denying the

petitioner's post-trial motions seeking a judgment of acquittal or new trial based upon the sufficiency of the evidence.

In his fourth and fifth assignments of error, the petitioner also asserts that the circuit court committed plain error by denying his motions for a judgment of acquittal and for a new trial because (1) J.M.B. was permitted to remain in the courtroom after she testified, (2) Sgt. Edwards testified regarding his arrest of the petitioner, and (3) the State allegedly vouched for J.M.B.'s credibility during its closing arguments. However, aside from citing the standard for establishing plain error and making conclusory assertions that the circuit court erred, the petitioner fails to provide any analysis or citation to relevant authority to support his contentions that error occurred. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that a petitioner's brief "must contain an argument clearly exhibiting the points of fact and law presented . . . and citing to the authorities relied on." We have warned that parties "who fail to follow our appellate rules inevitably generate a disjointed, poorly written, or difficult to understand brief, and they should not anticipate that this Court will find or make their arguments for them." *Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 245 W. Va. 495, 502, 859 S.E.2d 438, 445 (2021). Accordingly, because the petitioner failed to provide any argument regarding the factors for plain error or why he is entitled to such relief, we decline to make an argument for him and, therefore, find no merit to these unsupported claims.

In the petitioner's sixth assignment of error, he claims that the circuit court erred by denying his request for alternative sentencing and by sentencing him to consecutive terms of imprisonment. Our analysis of this issue is guided by Syllabus Point 4 of *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982), which provides that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Impermissible factors include "race, sex, national origin, creed, religion, and socioeconomic status . . . ." *State v. Moles*, No. 18-0903, 2019 WL 5092415, at *2 (W. Va. Oct. 11, 2019) (memorandum decision) (citation omitted). Here, the petitioner's sentence is undisputedly within statutory limits with fixed maximum sentences, and he was not sentenced pursuant to a recidivist statute. Further, he does not assert that the circuit court considered any impermissible factor. While he claims that the circuit court erred in denying him alternative sentencing and in running his sentences consecutively, we note that "[p]robation is a matter of grace and not a matter of right," Syl. Pt. 1, *State v. Rose*, 156 W. Va. 342, 192 S.E.2d 884 (1972), and that sentences are to be served consecutively unless a circuit court, in its discretion, orders them to run concurrently. *See* Syl. Pt. 3, *Keith v. Leverette*, 163 W. Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively."). Based upon the foregoing, appellate review of the petitioner's sentence is not available.

Finally, in his seventh assignment of error, the petitioner asserts that the circuit court's decision to impose a period of supervised release violates double jeopardy principles and is disproportionate to his crimes. According to the petitioner, his sentence, coupled with a term of supervised release, effectively requires him to serve two sentences.

We easily dispense with this claim, as we have previously held that

[t]he imposition of the legislatively mandated additional punishment of a period of supervised release as an inherent part of the sentencing scheme for certain offenses enumerated in West Virginia Code § 62-12-26 (2009) does not on its face violate the double jeopardy provisions contained in either the United States Constitution or the West Virginia Constitution.

Syl. Pt. 11, *State v. James*, 227 W. Va. 407, 710 S.E.2d 102 (2011). Further, this Court's review of a challenge to the proportionality of a sentence, including a term of supervised release, is reserved for life recidivist sentences or sentences for crimes involving no statutory maximum. *See* Syl. Pt. 4, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981) ("While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."); *Goodnight*, 169 W. Va. at 366, 287 S.E.2d at 505, Syl. Pt. 5 ("Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."). Because the extended supervision statute has a fixed maximum, *see* W. Va. Code § 62-12-26(a) (requiring imposition of a period of supervised release of up to fifty years for first-degree sexual abuse), and because we are not here considering a life recidivist sentence, the petitioner's supervised release sentence is not reviewable. *See State v. Montgomery,* No. 22-646, No. 2024 WL 313877, at *3 (W. Va. Jan. 25, 2024) (memorandum decision) (finding that the petitioner's term of extended supervised release was not reviewable if it was imposed within statutory guidelines and not a recidivist sentence); *State v. Jeffrey S.*, No. 15-1222, 2016 WL 6678992, *3 (W. Va. Nov. 14, 2016) (memorandum decision) (finding that the petitioner's extended supervision sentence was not reviewable as it was "imposed within the statutory guidelines" and, therefore, not unconstitutionally disproportionate); *State v. Pifer*, No. 12-1544, 2013 WL 5708442, *2 (W. Va. Oct. 21, 2013) (memorandum decision) (finding that the defendant's twenty-five-year term of extended supervision was "within the confines of West Virginia Code § 62-12-26 and, therefore, . . . not subject to appellate review").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 11, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

7